Bonnie MacNaughton (Bar No. 107402)
Emily Goodell (*pro hac vice forthcoming*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:     (206) 622-3150
Facsimile:      (206) 757-7700
Email:           bonniemacnaughton@dwt.com
                    emilygoodell@dwt.com

John D. Freed (Bar No. 261518)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Floor 23
San Francisco, CA 94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599
Email:           jakefreed@dwt.com

Attorneys for Plaintiffs
AMAZON.COM, INC.
AMAZON TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation, and AMAZON TECHNOLOGIES, INC., a Nevada corporation, <br><br> Plaintiffs, <br><br> v. <br><br> UMER WASIM, an individual, TEKNOBYL DIGITAL LLC, a Wyoming limited liability company, MUHAMMAD USMAN KHAN, an individual, VTLOGODESIGN, INC., a Florida corporation, MK AFFILIATES, INC., a Florida corporation, ALI ALAM, an individual, DYNAMIC DIGITAL SOLUTIONS LLC, a Virginia limited liability company, MEHWASH MUNIR, an individual, ONE STOP COMPUTER SERVICES LLC, a Virginia limited liability company, MUHAMMAD ZUBAIR KHAN, an individual, TECHTURE INC., a California corporation, MUHAMMAD MUDASSAR ANWAR, an individual, TECH DRIVE PVT LLC, a New York limited liability company, ASHHAR RAWOOF, an individual, SMART STARTUP SOLUTIONS, LLC, an | Case No. <br><br> **COMPLAINT; DEMAND FOR JURY TRIAL** |

Illinois limited liability company, YASIR
AGAR, an individual, MAVIA NIZAM, an
individual, MUHAMMAD SHIRAZ
QURESHI, an individual, AND
DOES 1-11,

      Defendants.

## I.   INTRODUCTION

1.      Defendants run an international scam operation that deceives authors into paying for fraudulent and materially substandard services under the guise that they are affiliated with Amazon by using logos that are confusingly similar or nearly identical to Amazon's distinctive trademarks.  While Amazon has already taken swift action to shut down many of Defendants' websites, Defendants—at least ten individuals and eight entities—continue to register new domains in order to continue the scam.  Through this lawsuit, Amazon aims to stop Defendants' scheme and hold them accountable for their unlawful activity.

2.      Amazon provides popular services that allow millions of authors to pursue lucrative careers in writing.  Amazon's Kindle Direct Publishing ("KDP") was launched in 2007 to empower writers and diversify publishing.  Through its self-publication tools, KDP has enabled millions of publishers and authors to reach new global audiences for their creative works in digital and print formats, while earning royalties of up to 70% of the list price on their titles and retaining the rights to their work.  Amazon Publishing ("APub"), on the other hand, is Amazon's in-house trade publisher of fiction, nonfiction, and children's books. APub publishes emerging, bestselling, and critically-acclaimed authors in digital, print, and audio formats.

3.      Defendants are a ring of individuals and entities, based in the United States and Pakistan, who operate a scam that preys on authors and induces them to purchase fraudulent services.  Defendants recruit victims through websites that make extensive use of Amazon's trademarks.  Not only do Defendants' websites confuse authors as to the websites' affiliation, Defendants misrepresent their affiliation with Amazon, KDP, and APub, including by sending authors documents containing forged signatures of Amazon executives.  Authors, believing they are working with Amazon, pay Defendants substantial sums of money, often thousands of dollars, for grossly inadequate or non-existent services.  Although some defrauded authors manage to obtain refunds from Defendants, many do not.  Defendants' conduct is egregious and

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

purposeful.  Defendants have caused significant harm to the author and publisher community, as well as to Amazon's reputation and the goodwill it has developed with this community.

## II.    PARTIES

4.      Amazon.com, Inc. (with Amazon Technologies, "Amazon") is a Delaware corporation with its principal place of business in Seattle, Washington.

5.      Amazon Technologies, Inc. ("Amazon Technologies") is a Nevada corporation with its principal place of business in Seattle, Washington.  Amazon Technologies is a subsidiary of Amazon.com, Inc., and is the registered owner of certain intellectual property rights associated with Amazon and affiliated businesses, including the trademarks described herein.

6.      Umer Wasim ("Wasim") is an individual residing in West Fargo, ND.

7.      Teknobyl Digital LLC ("Teknobyl") is a Wyoming limited liability company registered at an address in Sheridan, WY.  Defendant Wasim is the organizer of Teknobyl.

8.      Muhammad Usman Khan ("MU Khan") is an individual, on information and belief, residing in Pakistan, who has represented himself as residing in Fairfax, VA.

9.      VTLogodesign, Inc. ("VTL") is a Florida corporation registered at an address in Lake Mary, FL.  Defendant MU Khan is the incorporator and president of VTL.

10.     MK Affiliates, Inc. ("MKA") is a Florida corporation registered at an address in Orlando, FL.  Defendant MU Khan is the incorporator and sole officer of MKA.

11.     Ali Alam ("Alam") is an individual residing in Ashburn, VA.

12.     Dynamic Digital Solutions LLC ("DDS") is a Virginia limited liability company registered at an address in Ashburn, VA.  Defendant Alam is the organizer and a member or manager of DDS.

13.     Mehwash Munir ("Munir") is an individual residing in Ashburn, VA.

14.     One Stop Computer Services LLC ("OSCS") is a Virginia limited liability company registered at an address in Ashburn, VA.  Defendant Alam was the initial registered

4

agent and a member or manager of OSCS. Defendant Munir is the current registered agent for OSCS.  Alam and Munir are co-owners of OSCS. Alam filed fictitious name certificates for OSCS identifying the names "VT Logo Design," and "MK Affiliate."

15.     Muhammad Zubair Khan ("MZ Khan") is an individual residing in Los Angeles, CA.

16.     Techture Inc. ("TI") is a California corporation registered at an address in Los Angeles, CA.  Defendant MZ Khan is the Chief Executive Officer and sole officer of TI.

17.     Muhammad Mudassar Anwar ("Anwar") is an individual residing in Scarsdale, NY.

18.     Tech Drive Pvt LLC ("TD") is a New York limited liability company registered at an address in Scarsdale, NY.  Defendant Anwar is the organizer of TD.

19.     Ashhar Rawoof ("Rawoof") is an individual residing in Houston, TX.

20.     Smart Startup Solutions, LLC ("SSS") is an Illinois limited liability company registered at an address in Chicago, IL.  Defendant Rawoof is the sole manager of SSS, which has been involuntarily dissolved.

21.     Yasir Agar ("Agar") is an individual residing in Pakistan.  On information and belief, Defendant Agar is or was an employee of SSS.

22.     Mavia Nizam ("Nizam") is an individual residing in Pakistan.

23.     Muhammad Shiraz Qureshi ("Qureshi") is an individual residing in Pakistan.

24.     Defendant Does 1-11 are unknown individuals and/or entities doing business as Web Design Stop ("WDS"), TMAZ Services Digital ("TMAZ"), Atlas Technologies ("AT") and registering and operating the infringing websites described in Section IV as Subject Websites 6, 8, 9, 10, 19, 22, 23, and 25.

### III.    JURISDICTION

25.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (jurisdiction over trademark), and 15 U.S.C § 1121(a) because this action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

26.     The Court also has subject matter jurisdiction under 28 U.S.C § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The amount in controversy includes reputational damages to Amazon, Amazon's costs of investigation and attorneys' fees associated with this dispute, disgorgement of Defendants' profits from their tortious activities, and statutory damages.

27.     The Court has personal jurisdiction over Defendants, all of whom have conducted business activities in and directed to California.  At all times material to the allegations herein, Defendants did business directed to California, and operated infringing websites that listed business addresses in Santa Clara County, California.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Northern District of California.

29.     This case is properly assigned on a District-wide basis pursuant to Civil L.R. 3-2(c) because it arises out of Defendants' infringement of Amazon's intellectual property rights.

### IV.    FACTS

#### A.    Amazon

30.     Amazon owns and operates the website at Amazon.com.  **Figure 1[1]** below is a screenshot of Amazon.com.  The upper left corner of the site features—and has featured during the entire period relevant to this lawsuit—a trademarked Amazon logo consisting of the word

---

[1] Image captured from amazon.com on 8/11/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

"amazon" in white text, under which appears an orange arrow in the shape of a smile.  The color scheme of Amazon.com is white, Smile Orange (orange), black, and Squid Ink (dark blue).

**Figure 1.**



### 1.    Amazon Publishing ("APub")

31.    Amazon Publishing ("APub") was founded in 2009. Since its founding, APub has helped over a hundred authors (and counting) reach more than one million readers, and over a thousand authors earn more than $50,000 from their writing.  APub authors have received more than 450 award nominations.  APub's editors acquire fiction, nonfiction, young adult, and children's titles through 17 imprints in the US, 5 in the UK, and 5 in Germany. APub negotiates terms with the author which grant APub the right to publish, market, and distribute the author's book in exchange for a flat fee payment or royalties from the book's sales.  Leveraging Amazon's drive for innovation and passion for books, APub merges technology and art to support its authors.  APub's editorial, sales, marketing, publicity, design, production, user research, product innovation, author services, and software engineering teams innovate to help authors share their stories with a global audience and deliver a high-impact, diverse selection of titles for readers and listeners to enjoy.

32.    APub advertises and operates the website at amazonpublishing.amazon.com.  *See* **Figure 2,** below.[2]

---

[2] Image captured from amazonpublishing.amazon.com on 7/25/2023.

**Figure 2.**





# Great stories are our passion.

### 2. Kindle Direct Publishing (KDP)

33.     Amazon's Kindle Direct Publishing ("KDP") service allows authors to self-publish books in print and digital formats for free and reach millions of readers in over a dozen Amazon marketplaces and 175 countries.  KDP has helped millions of authors reach new readers and pursue careers in self-publishing.  KDP self-published authors have won numerous awards, including the Romance Writers of America RITA Award, the highest award of distinction in romance fiction.  More than 269,000 people follow Amazon's KDP Facebook page and more than 78,800 people follow Amazon's KDP Twitter feed.

34.     KDP authors control the rights to their titles and can make changes to their books at any time.  Authors can set up an eBook for publication within minutes, and within 72 hours the eBook appears for sale on the Amazon Kindle Store.  When publishing, authors select a royalty plan, which determines what percentage of amounts earned from sales are paid to the author.  KDP offers numerous free services to authors.  KDP offers a free program called KDP Select that allows authors to reach additional readers through the Kindle Unlimited subscription service, enables authors to take advantage of Amazon and Kindle promotions on their titles, and gives authors access to promotional tools such as free give-away days and time-based price promotions.  The KDP Select Global Fund has provided more than $2.8 billion dollars in

royalties to participants in KDP Select for their participation in Kindle Unlimited.  An author listing an eBook can gift a redemption code for a free copy, and can create a free Author Page. Additional related services that KDP offers for free include providing an International Standard Book Number ("ISBN"), which is required to publish a paperback or hardcover book, free tools for creating book covers, templates, front, body and back matter elements and Kindle Create software, a free interior formatting tool. KDP authors can enroll for free in an Expanded Distribution program, which makes paperbacks that are available on Amazon.com also available to distributors, allowing booksellers and libraries to order them.  Amazon also offers advertising for KDP books on a cost-per-click basis.

35.     KDP advertises and operates the website at kdp.amazon.com. *See* **Figure 3, below.**[3]

**Figure 3.**



3.     **The Amazon Trademarks**

| Trademarks | Registration Nos. |
| --- | --- |
| Amazon | 2,078,496<br>2,559,936<br>2,857,590 |

---

[3] Image captured from kdp.amazon.com on 9/25/2023.

| Trademarks | Registration Nos. |
|---|---|
| | 2,832,943 |
| | 2,738,837 |
| | 2,738,838 |
| | 2,657,226 |
| | 3,868,195 |
| | 4,171,964 |
| | 4,533,716 |
| | 4,608,470 |
| | 4,656,529 |
| | 4,907,371 |
| | 5,102,687 |
| | 5,281,455 |
| | 5,906,636 |
| | 6,228,267 |
| | 6,687,103 |
| | 6,776,595 |
| | 7,055,661 |
| amazon | 4,171,965 |
| | 5,038,752 |
| | 5,508,999 |
| | 5,775,740 |
| | 6,136,716 |
| | 6,200,815 |
| | 6,019,093 |
| | 6,687,104 |
| | 6,776,596 |
| | 7,055,662 |
| amazon | 6,666,404 |
| Amazon.com | 3,411,872 |
| | 2,633,281 |
| | 2,837,138 |
| | 2,167,345 |
| | 2,903,561 |
| | 2,951,941 |
| | 4,841,614 |
| | 5,775,763 |
| | 6,097,171 |
| | 6,178,564 |
| | 6,810,456 |
| | 7,055,660 |
| | 7,108,071 |
| Kindle | 3,694,267 |
| | 4,289,293 |
| | 4,380,471 |

10

| Trademarks | Registration Nos. |
|---|---|
|  | 4,932,736<br>5,054,865<br>5,146,885 |
|  | 6,834,173 |
|  | 3,709,331 |

36.     The Amazon Trademarks ("Amazon Marks") have been used exclusively and

continuously by Amazon, and have never been abandoned.  The above U.S. registrations for the

Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable

pursuant to 15 U.S.C. § 1065.  The registrations for the Amazon Trademarks constitute prima

facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks

pursuant to 15 U.S.C. § 1057(b).

### B.     Defendants Deceive Victims into Purchasing Services By Creating the False Perception That They Are Affiliated with Amazon

37.     Defendants use the Amazon Marks in their domain names and on their websites to

divert victims from Amazon's genuine websites to Defendants' websites that purport to offer

services to help authors create, edit, and publish their works through APub or KDP.  Defendants'

websites also prominently display references to Amazon including, "Looking to Publish Your

Book on Amazon?", "Amazon KDP Focused Book Marketing Services", and "Customizable

Publishing Packages by Amazon Professional Publishers", to further the ruse of affiliation with

Amazon.  Defendants' websites have chat boxes that pop up on their sites, advertise phone

numbers to call, and provide documentation with false and misleading representations of

affiliation with Amazon that deceive victims into believing Defendants are affiliated with

Amazon.  Defendants prey on innocent authors to sell them inauthentic, inferior, overpriced, and often non-existent services.

38.    Amazon has obtained registrant information for several of the Subject Websites by filing multiple UDRP actions.  However, in publicly available records, almost all Subject Websites' true registrants are obscured[4] and registrars used are either Namecheap or GoDaddy.com LLC.

39.    The Subject Websites use overlapping service providers, IP addresses, website graphics and design, and language, and advertise overlapping physical addresses.  Defendant billing entities use overlapping Subject Websites and entity names.

40.    In addition to each Defendant's use of specific Subject Websites and domains as described in the following section, on information and belief, Defendants are operating a conspiracy using the Subject Websites, other unknown websites, and their associated domains to market and distribute products and services using the Amazon Marks, with a bad faith intent to profit from the use of them.

### 1.    Wasim, Teknobyl, WDS (Doe 1), TMAZ (Doe 2)

41.    According to public records, Defendant Wasim owns and operates Teknobyl.  On information and belief, Defendant Wasim also owns and operates fictitious entities WDS and TMAZ.

42.    Defendant Does operating as WDS are the registrant(s) for a collection of fraudulent and infringing domains through which Defendants perpetrated their Amazon impersonation scheme on unsuspecting victims, including through the use of websites using the following domains in their web addresses: amazonpublishingoffice.com ("Website 1");

---

[4] With the exception of domains amazonpublishers.ca, amazonbookhub.com.au, and amazonkdpublishers.com for a short period of time.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

amazondirectpublisher.com ("Website 2"); amazonkdppublishingpros.com ("Website 3");

amazonpublishingfirm.com ("Website 4"); and amzprofs.com ("Website 5").  Each of the

domains for Websites 1-5 listed addresses in San Jose, CA.  The registrant information for each

of the domains for Websites 1-5 is Web/Design Stop, 2880 Zanker Road North, Suite 203, San

Jose, CA 95134 United States; support@webdesignstop.com; +14082167976.

43.     Each of Websites 1-5 is no longer operative, and the domains used in their web

addresses have been transferred into Amazon's possession pursuant to a Uniform Domain-Name

Dispute-Resolution ("UDRP") Administrative Panel's decision, filed on June 16, 2023.[5]

**a.      Website 1 (amazonpublishingoffice.com)**

44.     Defendant Does operating as WDS registered the domain used in the web address

for Website 1 (amazonpublishingoffice.com) on October 20, 2022.

45.     While active, Website 1 used the Amazon Marks and other tactics to deceive

victims into believing it was affiliated with Amazon.  The deception started with the domain

name, which unlawfully used the Amazon Marks.  As shown in **Figure 4**[6] below, Website 1 is

designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 1 features the word "Amazon" in white text paired with an inverted

version of Amazon's orange smile logo, set against a black background in the upper left corner

of the site.  This design intentionally mirrors the design of Amazon.com, which also features the

word "Amazon" in white text paired with the orange smile logo, set against a black background

in the upper left corner of the website.  The orange and black color scheme in Website 1 is the

same color scheme used on Amazon.com.

**Figure 4**

---

[5] *See* Forum Alternative Dispute Resolution Decision FA2305002043019.
[6] Images captured from amazonpublishingoffice.com on 11/19/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955



46.     **Website 1 Victim Report.**  On or about March 31, 2023, a victim ("Victim 1")

reported that Defendants defrauded her through Website 1.  Victim 1 is an author who sought to

self-publish a book through Amazon, and inadvertently visited Website 1 in an attempt to locate

Amazon's legitimate publishing services.  Website 1's design and use of the Amazon Marks

caused Victim 1 to believe she had visited Amazon's official website.  Victim 1 then

corresponded with Defendants or their agents, who not only claimed to be Amazon

representatives, but sent Victim 1 documents making further uses of the Amazon Marks.

Believing she was working with Amazon, Victim 1 paid Defendants $4,000.00 for purported

editorial and publication services.  After Defendants provided Victim 1 with materially

insufficient editorial services, Victim 1 attempted to cancel her contract with Defendants and

obtain a refund of the $4,000.00 fee.  At this time, Victim 1 investigated and learned that she had

made a payment to Defendant Does operating as TMAZ not to Amazon.  Victim 1's credit card

company informed her that TMAZ is associated with WDS's website in its merchant records.

### b.    Website 2 (amazondirectpublisher.com)

47.    Defendant Does operating as WDS registered the domain used in the web address

for Website 2 (amazondirectpublisher.com) on November 18, 2022.

48.    While active, Website 2 used the Amazon Marks and other tactics to deceive

victims into believing it was affiliated with Amazon.  The deception started with the domain

name, which unlawfully used the Amazon Marks.  As shown in **Figure 5**[7] below, Website 2 is

designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 2 features the word "Amazon" paired with Amazon's orange smile

logo, set in the upper left corner of the site.  This design intentionally mirrors the design of

Amazon.com, which also features the word "Amazon" (in a similar font) with the orange smile

logo, set in the upper left corner of the website.  The orange and black color scheme in Website 2

is the same color scheme used on Amazon.com.  Furthermore, the website falsely states that the

entity "Partners with Amazon Publishing", which it does not.

---

[7] Images captured from amazondirectpublisher.com on 1/10/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955



**Figure 5**



COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

49.      **Website 2 Test Purchase.**  On or about February 3, 2023, an outside investigator working for Amazon's outside counsel visited Website 2 and, through Website 2's contact page, submitted a request for "more information regarding editing/publishing services."  Defendants responded to the investigator's inquiry with a series of messages containing knockoff versions of the Amazon Marks, in addition to content referencing Website 5 (amzprofs.com).  In one message, after the investigator asked for "reassurances that your company is, in fact, Amazon," Defendants represented to the investigator that "*[w]e are a part of the Amazon family, a division of Amazon* that assists Authors with everything in relation to their books, from writing and editing to designing and publication."  *See* **Figure 6**, below (emphasis added).  Defendants offered the investigator various publishing services for $300, and asked the investigator to wire payment to a bank account in the name of Defendant Teknobyl.  Defendants also communicated with the investigator using phone number 408-600-0309.  Amazon has traced this number to WDS and the home address of Defendant Wasim.

**Figure 6**



Hello Bruce,

That is exactly what I will be sharing with you when connected on call Sir. We are a part of the Amazon family, a division of Amazon that assists Authors with everything in relation to their books, from writing and editing to designing and publication. We have been in contact since the time you reached out to us and have provided you with everything that you have asked for thus far. If you still feel that we are not who we say we are, then with the humblest of apologies Sir, there is only so much that I can do. My advice, do you due diligence to see what is and what isn't, and if after it all you wish to proceed, let me know and I will assist you accordingly.

Thank you.

Best regards,

**Shane Francis**
Project Lead
**Mobile:** 408-600-0309
**Phone:** 408-440-5333
**Email:**
shane.francis@amazondirectpublisher.com
**Web:** www.amazondirectpublisher.com

50.      **Website 2 Victim Report.**  On or about January 31, 2023 a victim ("Victim 2") reported that she had been defrauded by Defendants through Website 2.  Victim 2 is an author

who sought to self-publish a book through Amazon, and inadvertently visited Website 2 in an attempt to locate Amazon's legitimate publishing services.  Website 2's design and use of the Amazon Marks caused Victim 2 to believe she had visited Amazon's official website.  Victim 2 then corresponded with Defendants or their agents, who not only claimed to be Amazon representatives, but sent Victim 2 documents making further uses of the Amazon Marks, as well as a "Certificate of Acknowledgement" purportedly signed by Amazon executives.  *See* **Figure 7**, below.  Believing she was working with Amazon, Victim 2 paid Defendants $5,800.00 for purported editorial and publication services.

**Figure 7.**



c.      **Website 3 (amazonkdppublishingpros.com)**

51.      Defendant Does operating as WDS registered the domain used in the web address for Website 3 (amazonkdppublishingpros.com) on March 3, 2023.

52.      While active, Website 3 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain

18

name, which unlawfully used the Amazon Marks.  As shown in **Figure 8**[8] below, Website 3 is substantially similar to Website 2, and is designed to convey a misleading and confusing affiliation with Amazon.  Website 3 features the word "Amazon" paired with Amazon's orange smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" (in a similar font) with the orange smile logo, set in the upper left corner of the website.  The orange and black color scheme in Website 3 is the same color scheme used on Amazon.com.  Furthermore, the website falsely states that the entity "Partners with Amazon Publishing", which it does not.  Website 3 has a disclaimer stating that "All company logos and trademarks appearing on our website are the property of their respective owners.  We are not affiliated, associated, endorsed by, or in any way officially connected with these companies or their trademarks."  Far from insulating Defendants from liability for their fraudulent and infringing activity, this vague and ineffective disclaimer fails to even refer to Amazon by name and reveals that Defendants are keenly aware that the use of Amazon's trademarks is likely to cause consumer confusion.

**Figure 8 – next page.**

[8] Images below captured from amazonkdppublishingpros.com on 3/30/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955



COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

d.      **Website 4 (amazonpublishingfirm.com)**

53.      Defendant Does operating as WDS registered the domain used in the web address for Website 4 (amazonpublishingfirm.com) on November 1, 2022.

54.      While active, Website 4 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 9**[9] below, Website 4 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 4 features the word "Amazon" paired with an orange arc to mimic Amazon's orange smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the orange smile logo, set in the upper left corner of the website.  The orange and black color scheme in Website 4 is the same color scheme used on Amazon.com.  Website 4 has a disclaimer stating that, "Amazon Publishing Firm is an independent entity helping self-reliant authors with book publishing and marketing solutions.  We believe in ethical business practices and abide by US Federal and State Laws." Far from insulating Defendants from liability for their fraudulent and infringing activity, this vague and ineffective disclaimer fails to even refer to Amazon by name and reveals that Defendants are keenly aware that the use of Amazon's trademarks is likely to cause consumer confusion.

**Figure 9.**

[9] Images captured from amazonpublishingfirm.com on 11/29/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955



**e.      Website 5 (amzprofs.com)**

55.      Defendant Does operating as WDS registered the domain used in the web address

for Website 5 (amzprofs.com) on July 25, 2022.

22

56.     While active, Website 5 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the page title, "The Best Amazon Marketing Company," which unlawfully used an Amazon Mark.  The domain name uses "AMZ", which when used in conjunction with the sale of products relating to Amazon services, is clearly meant to be an abbreviated version of Amazon's trademarked name. As shown in **Figure 10**[10], Website 5 also featured an orange arrow, from left to right, in the shape of an upward arc, which is confusingly similar to Amazon's orange smile logo.  A link to Website 5 was contained in an email to Victim 1 in connection with her use of Website 1, as described above.

**Figure 10.**



[10] Images captured from amzprofs.com on 8/20/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955



**2.** **MU Khan, Alam, Munir, MZ Khan, Anwar, Rawoof, Agar, Nizam, Qureshi, VTL, MKA, DDS, OSCS, TI, TD, SSS, and Does 3-11**

57.     The Defendants identified in this Section 2 are responsible for the infringing websites using the following domains in their web addresses: amazondigitalpublishing.com ("Website 6"); amazonkindledirectpublishing.com ("Website 7"); amazondigitalpublisher.com ("Website 8"); amazondigitalpublishers.com ("Website 9"); amazonpublishingsol.com ("Website 10"); amazonproinc.com ("Website 11"); amazonprofinc.com ("Website 12"); amazonkindlebookpublishing.com ("Website 13"); amazonkindleproinc.com ("Website 14"); amazonkdpublishers.com ("Website 15"); amazonpublishers.ca ("Website 16"); amazonbookhub.com.au ("Website 17"); amazondigitalpro.com ("Website 18"); amzdigitalpro.com ("Website 19"); amazonpublisherpro.com ("Website 20"); amazonpublishingzone.com ("Website 21"); amazonkdpublishing.com ("Website 22"); amazonkdppublication.com ("Website 23"); amazonpublishingpartner.com ("Website 24"); amazonprofessionalpublishers.com ("Website 25"); and amzkindlepublishing.com ("Website 26").

58.     Each of Websites 7, 11-15, 18, 20, 21, 24, and 26 are no longer operative, and the domains used in their web addresses have been transferred into Amazon's possession pursuant to

UDRP Administrative Panel decisions filed on January 5, 2023, April 13, 2023, June 16, 2023, August 10, 2023, and August 19, 2023.[11]

### f.       Website 6 – amazondigitalpublishing.com

59.     The domain used in the web address for Website 6 (amazondigitalpublishing.com) was registered on July 5, 2022.  Amazon is unaware of the registrant for Website 6, because the registrant information is redacted in publicly available records.  Third party Namecheap is the registrar of the domain used in the web address for Website 6.

60.     While active, Website 6 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 11**[12] below, Website 6 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 6 uses a similar color scheme to that used on Amazon.com.

**Figure 11.**



[11] *See* Forum Alternative Dispute Resolution Decisions FA 2212002023877, FA2303002034433, FA2305002043019, FA2307002053542, and FA2307002053540.
[12] Images captured from amazondigitalpublishing.com on 7/22/2022.



61.     **Website 6 Victim Report #1.**  On or about August 5, 2022, a victim ("Victim 3")

reported that she had been defrauded by Defendants through Website 6.  Victim 3 is an author

who sought to self-publish a book through Amazon, and inadvertently visited Website 6 in an

attempt to locate Amazon's legitimate publishing services.  Website 6's design and use of the

Amazon Marks caused Victim 3 to believe she had visited Amazon's official website.  Victim 3

then corresponded with Defendants or their agents, who not only claimed to be Amazon

representatives, but sent Victim 3 documents making further uses of the Amazon Marks.

Believing she was working with Amazon, Victim 3 paid Defendants $1,599.00 for purported

editorial and publication services.  The merchant appeared on her credit card as "AMAZON

DIGITAL PUBLISH 188-84072583 FL".  This phone number appeared on a website at

vtlogodesign.com, which also advertised the registered address of Defendant VTL.  See **Figure**

**12**[13].  The website later advertised that VT Logo Design is a subsidiary company of Defendant

OSCS.  After making payment, Victim 3 learned that Website 6 has no affiliation with Amazon.

**Figure 12.**



---

[13] Image captured from vtlogodesign.com on 11/16/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

62.     **Website 6 Victim Report #2.**  On or about December 26, 2022, a victim ("Victim 4") contacted Amazon and reported that she had been defrauded by Defendants through Website 6.  Victim 4 is an author who sought to self-publish a book through Amazon, and visited Website 6 in an attempt to locate an intermediary service to help her get her digital files accepted by KDP.  Defendant's use of the Amazon Marks caused Victim 4 to believe she had located an entity affiliated with Amazon.  Victim 4 then corresponded with Defendants or their agents, who sent Victim 4 documents making further uses of the Amazon Marks—including a letter with the forged signature of the head of Amazon Publishing.  Defendants communicated with Victim 4 using some emails with Website 7's domain.  Believing she was working with Amazon, Victim 4 paid Defendants approximately $5,000.00 for purported editorial and publication services.  Victim 4 wire-transferred $2,823 after being provided an account number and the entity name and address for Defendant VTL.  Victim 4 made additional payments via credit card to "MK Affiliate Inc. Orlando FL"—i.e., on information and belief, Defendant MKA.  After making these payments, Victim 4 received materially deficient publishing services.  Victim 4 sued various Defendants in this case (including MKA), but has been unable to serve them at any of their claimed addresses in California, Virginia, or Florida.

63.     **Website 6 Victim Report #3.**  On or about November 14, 2022, a victim ("Victim 5") reported being defrauded by Defendants or their agents operating Website 6.  Victim 5 said that he paid Defendants approximately $5,000.00 for publishing services he believed would be provided by Amazon.  As with Victims 2 and 4, Defendants provided Victim 5 with a document purportedly signed by an Amazon executive.  *See* **Figure 13**, below.  In correspondence with Victim 5, Defendants referenced Website 22 (amazonkdpublishing.com, discussed below), revealing a connection between the two sites.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

1

**Figure 13.**



2

3

4

5

6

7

8

9

10

11

12

13

14

     **g.**  **Website 7 - amazonkindledirectpublishing.com**

15

  64.  Defendant Rawoof registered the domain used in the web address for Website 7

16

(amazonkindledirectpublishing.com) on November 16, 2022.

17

  65.  While active, Website 7 used the Amazon Marks and other tactics to deceive

18

victims into believing it was affiliated with Amazon.  The deception started with the domain

19

name, which unlawfully used the Amazon Marks.  As shown in **Figure 14**[14] below, Website 7 is

20

designed to convey a misleading and confusing affiliation with Amazon, making further use of

21

the Amazon Marks.  Website 7 features the words "Amazon" and "KDP" paired with Amazon's

22

orange smile logo, set in the upper left corner of the site.  This design intentionally mirrors the

23

24

25

[14] Images captured from amazonkindledirectpublishing.com on 12/10/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

design of Amazon.com, which also features the word "Amazon" with the orange smile logo, set in the upper left corner of the website, using a similar font.

**Figure 14.**





66.     As referenced above, Victim 4 received emails from Defendants using the domain for Website 7, after initially receiving emails using the domain for Website 6.

### h.      Website 8 - amazondigitalpublisher.com

67.     The domain used in the web address for Website 8 (amazondigitalpublisher.com) was registered on September 8, 2022.  Amazon is unaware of the registrant for Website 8,

because the registrant information is redacted in publicly available records.  Third party

Namecheap is the registrar of the domain used in the web address for Website 8.

68.     While active, Website 8 used the Amazon Marks and other tactics to deceive

victims into believing it was affiliated with Amazon.  The deception started with the domain

name, which unlawfully used the Amazon Marks.  As shown in **Figure 15**[15] below, Website 8 is

designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 8 uses a similar color scheme to that used on Amazon.com.

**Figure 15.**





---

[15] Images captured from amazondigitalpublisher.com on 9/20/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

i.      **Website 9 - amazondigitalpublishers.com**

69.     The domain used in the web address for Website 9 (amazondigitalpublishers.com)

was registered on September 7, 2022. Amazon is unaware of the registrant for Website 9,

because the registrant information is redacted in publicly available records.  Third party

Namecheap is the registrar of the domain used in the web address for Website 9.

70.     While active, Website 9 used the Amazon Marks and other tactics to deceive

victims into believing it was affiliated with Amazon.  The deception started with the domain

name, which unlawfully used the Amazon Marks. As shown in **Figure 16**[16] below, Website 9 is

designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 9 uses a similar color scheme to that used on Amazon.com.

**Figure 16.**



_____
[16] Images captured from amazondigitalpublishers.com on 9/19/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

#### j. **Website 10 - amazonpublishingsol.com**

71. The domain used in the web address for Website 10 (amazonpublishingsol.com) was registered on August 22, 2022. Amazon is unaware of the registrant for Website 10, because the registrant information is redacted in publicly available records. Third party Namecheap is the registrar of the domain used in the web address for Website 10. It was initially hosted on the same IP address, and listed the same contact phone number as Website 24 (amazonpublishingpartner.com).

72. While active, Website 10 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon. The deception started with the domain name, which unlawfully used the Amazon Marks. As shown in **Figure 17**[17] below, Website 10 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks. Website 10 uses a similar color scheme to that used on Amazon.com.

---

[17] Images captured from amazonpublishingsol.com on 9/14/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

1

**Figure 17.**





16

          **k.**      **Website 11 – amazonproinc.com**

17       73.     The domain used in the web address for Website 11 (amazonproinc.com) was

registered on May 27, 2022 to Defendant Does operating as AT.

       74.     While active, Website 11 used the Amazon Marks and other tactics to deceive

victims into believing it was affiliated with Amazon.  The deception started with the domain

name, which unlawfully used the Amazon Marks.  As shown in **Figure 18**[18] below, Website 11

is designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 11 features the word "Amazon" paired with an orange arc,

[18] Images captured from amazonproinc.com on 3/12/2023.

33

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

1  reminiscent of Amazon's orange smile logo, set in the upper left corner of the site.  This design

2  intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with

3  the orange smile logo, set in the upper left corner of the website, using a similar font.

4  **Figure 18.**



5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

21  75.    **Website 11 Victim Report #1.**  On or about April 20, 2023, a victim ("Victim

22  6") reported that he had been defrauded by Defendants through Website 11.  Victim 6 is an

23  author who sought to self-publish a book through Amazon, and visited Website 11, which he

24  believed was for Amazon's legitimate publishing services.  Website 11's design and use of the

25  Amazon Marks caused Victim 6 to believe he had visited an official website for a division of

34

1    Amazon.  Believing he was working with Amazon, Victim 6 paid Defendants $220.00 for

2    purported editorial and publication services.  Victim 6's credit card statement showed this

3    payment went to a merchant using the name "Dynamic Digital Solutions," on information and

4    belief, Defendant DDS.  After paying these funds, and receiving unacceptable service, Victim 6

5    learned that Website 11 has no affiliation with Amazon.

6        76.    **Website 11 Victim Report #2.**  On or about March 10, 2023, a victim ("Victim

7    7") reported that he had been defrauded by Defendants through Website 11.  Victim 7 is an

8    author who sought to self-publish a book through Amazon, and inadvertently visited Website 11

9    in an attempt to locate Amazon's legitimate publishing services.  Website 11's design and use of

10   the Amazon Marks caused Victim 7 to believe he had visited Amazon's official website.

11   Believing he was working with Amazon, Victim 7 paid Defendants $1,899 for purported

12   editorial and publication services.  Victim 7 received written confirmation that his payment was

13   made to Defendant TI.  After paying these funds, Victim 7 learned that Website 11 has no

14   affiliation with Amazon.

15       77.    **Website 11 Victim Report #3.**  On or about March 10, 2023 a victim ("Victim

16   8") reported that he had been defrauded by Defendants through Website 11.  Victim 8 is an

17   author who sought to self-publish a book through Amazon, and inadvertently visited Website 11

18   in an attempt to locate Amazon's legitimate publishing services.  Website 11's design and use of

19   the Amazon Marks caused Victim 8 to believe he had visited Amazon's official website.  Victim

20   8 then corresponded with Defendants or their agents, who not only claimed to be Amazon

21   representatives, but sent Victim 8 documents making further uses of the Amazon Marks.

22   Believing he was working with Amazon, Victim 8 paid Defendants $9,000 for purported

23   editorial and publication services.  Victim 8's credit card statement indicated that his payment

24   was made to Defendant TI.  After paying these funds, Victim 8 learned that Website 11 has no

25   affiliation with Amazon.  Victim 8 later received correspondence and documents from

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

Defendants or their agents using and referencing Website 13 (amazonkindlebookpublishing.com, discussed below), revealing a connection between the two sites.

78.     **Website 11 Victim Report #4.**  On or about May 8, 2023, a victim, ("Victim 9") provided an invoice for $4,500 which referenced the domain used in the web address for Website 11, and indicated that it was sent from "Techtureinc".  The invoice indicated that Amazon Pro Inc. "DBA Techture Inc."  *See* **Figure 19,** below.  On information and belief, this invoice was sent by Defendant TI.

**Figure 19.**



----- Forwarded Message -----
**From:** "techtureinc" <no-reply@techtureinc.com>
**To:** "sales@techtureinc.com" <sales@techtureinc.com>, "steve.sanders@amazonproinc.com" <steve.sanders@amazonproinc.com>
**Cc:**
**Sent:** Thu, Feb 9, 2023 at 12:34 PM
**Subject:** New Payment Invoice Link

**DBA Techture Inc**

**Invoice Details:**

| Client Name: | |
| --- | --- |
| Project Description: | RR - Marketing Package |
| Amount: | 4500USD |
| Packages: | |
| Invoice Link : | CLICK HERE TO PAY |

Please feel free to send us an email at billing@techtureinc.com or call us at 608-389-7077 for billing related queries.

Thank you for choosing amazonproinc.com.

### l.     Website 12 -amazonprofinc.com

79.     The domain used in the web address for Website 12 (amazonprofinc.com) was registered on March 16, 2023 to Defendant Agar.

80.     While active, Website 12 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 20**[19] below, Website 12 is designed to convey a misleading and confusing affiliation with Amazon, making further use of

---

[19] Images captured from amazonprofinc.com on 3/18/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

the Amazon Marks.  Website 12 features the word "Amazon" paired with Amazon's smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the smile logo, set in the upper left corner of the website.

**Figure 20.**



81.     On or about July 5, 2023, a victim ("Victim 10") reported that he had been defrauded by Defendants through Website 12.  Victim 10 is an author who sought to self-publish a book through Amazon.  Website 12's design and use of the Amazon Marks caused Victim 10 to believe the site was operated by Amazon, or an entity affiliated with Amazon's legitimate

37

publishing services.  Victim 10 then corresponded with Defendants or their agents, who not only claimed to be Amazon representatives, but sent Victim 10 documents making further uses of the Amazon Marks.  Believing he was working with Amazon, Victim 10 paid Defendants $2,250 for purported editorial and publication services.  Victim 10 received an invoice from the same sender, and using substantially the same language as Victim 9 to make payment to Defendant TI. After making payment, Victim 10 learned that Website 12 has no affiliation with Amazon.

**m.      Website 13 – amazonkindlebookpublishing.com**

82.      The domain used in the web address for Website 13 (amazonkindlebookpublishing.com) was registered on March 30, 2023 to Defendant Agar.  On information and belief, the email indicated for the registrant (yasir@smartstartupsolutions.com) is linked to Defendant SSS.

83.      While active, Website 13 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 21**[20] below, Website 13 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 13 features the word "Amazon" paired with Amazon's smile logo, set in the upper left corner of the site. This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the smile logo, set in the upper left corner of the website.

---

[20] Images captured from amazonkindlebookpublishing.com on 4/25/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

1

**Figure 21.**



84.   As referenced above, Victim 8 received correspondence and documentation from Defendants or their agents using the domain for Website 13.

**n.   Website 14 – amazonkindleproinc.com**

85.   The domain used in the web address for Website 14 (amazonkindleproinc.com) was registered on March 22, 2023 to Defendant Agar.

86.   While active, Website 14 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

name, which unlawfully used the Amazon Marks.  As shown in **Figure 22**[21] below, Website 14 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 14 features the word "Amazon" paired with Amazon's smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the smile logo, set in the upper left corner of the website.

**Figure 22.**



---

[21] Images captured from amazonkindleproinc.com on 6/14/2023. An earlier screen capture of Website 14, taken on March 22, 2023, advertised an address at 1160 Battery Street, San Francisco, CA 94111 and referred to Amazon Prof. Inc.

40

### o.      Website 15 – amazonkdpublishers.com

87.     The domain used in the web address for Website 15 (amazonkdpublishers.com) was registered on March 30, 2023 through registrar GoDaddy.com, LLC.  Public records listed the registrant of this domain as "Registration Private.  On August 22, 2023, the registrant name was changed to that of Defendant Agar, before being updated to "Brandsight Privacy Customer 261809" on September 28, 2023.  On information and belief, the registrant email indicated for the Defendant (yasir@smartstartupsolutions.com) is linked to Defendant SSS.

88.     While active, Website 15 used the Amazon Marks and other tactics to deceive victims into believing it is affiliated with Amazon.  The deception starts with the domain name, which unlawfully uses the Amazon Marks.  As shown in **Figure 23**[22] below, Website 15 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 15 features the words "Amazon" and "KD" paired with Amazon's orange smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the orange smile logo, set in the upper left corner of the website.

---

[22] Images captured from amazonkdpublishers.com on 8/22/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

**Figure 23.**



p.      **Website 16 - amazonpublishers.ca**

89.     The domain used in the web address for Website 16 (amazonpublishers.ca) was

registered on June 20, 2022 to Defendant MZ Khan.

90.     Website 16 uses the Amazon Marks and other tactics to deceive victims into

believing it is affiliated with Amazon.  The deception starts with the domain name, which

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

unlawfully uses the Amazon Marks.  As shown in **Figure 24**[23] below, Website 16 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 16 features the word "Amazon" set in the upper left corner of the site, in a manner reminiscent of Amazon's official website.  Website 16 also mimics Amazon's black and orange color scheme.

**Figure 24.**











**AMAZON**
PUBLISHERS

Amazon Publishers is a renowned
Amazon Consultation company in
the USA known for providing robust
Amazon eCommerce solutions to
skyrocket the revenues for brands.

**Services**

Ecommerce Store
Setup

Ecommerce Marketing

Amazon Services

About

**Platform**

Contact Us

Testimonials

Terms Conditions

Privacy Policy

**Address**

1 (800) 944-2184

info@amazonpublishers.ca

Penn Plaza New York, NY 10001 USA

Live Chat

Get a Quote

**Social**

All Rights Reserved 2022 - Amazon Publishers

91.     Although the country code top-level domain for Website 16's web address is for Canada, the website advertises a Unites States address, and indicates that the company is "in the USA".

q.     **Website 17 – amazonbookhub.com.au**

92.     The domain used in the web address for Website 17 (amazonbookhub.com.au) was registered on October 26, 2022 to Defendant MZ Khan.

93.     While active, Website 17 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 25**[24] below, Website 17 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks. Website 17 features the word "Amazon" set in the upper left corner of the site, in a manner reminiscent of Amazon's official website.  Website 17 also mimics Amazon's black and orange color scheme.

---

[24] Images captured from amazonbookhub.com.au on 7/13/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

**Figure 25.**











COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

94.     Although the country code top-level domain for Website 16's web address is for Australia, the website advertises that the company is "in the USA".

**r.      Website 18 – amazondigitalpro.com**

95.     The domain used in the web address for Website 18 (amazondigitalpro.com) was registered on December 16, 2022 to Defendant Nizam.  The email address used by the registrant (mavianizam96@gmail.com) is the same as that used by the registrant for Websites 20 and 21.

96.     While active, Website 18 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 26**[25] below, Website 18 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 18 features the word "Amazon" paired with an orange arc to mimic Amazon's orange smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the orange smile logo, set in the upper left corner of the website.  The orange and black color scheme in Website 18 is the same color scheme used on Amazon.com.

**Figure 26.**



---

[25] Images captured from amazondigitalpro.com on 1/6/2023.

46



97.     On information and belief, Defendants operate a companion Facebook page, which advertises the same entity name as Website 18, and logo as Website 19, pictured in **Figure 27,** below[26]:

**Figure 27.**

98.     On information and belief, Defendants also operate a LinkedIn page, which advertises the same entity name as Website 18, and logo as Website 19, pictured below, in

---

[26] Image captured from facebook.com/amazondigitalpro on 8/2/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

**Figure 28**.[27]  The LinkedIn page indicates that one LinkedIn Member located in San Francisco, CA, is an employee of Website 18.

**Figure 28.**



99.  **Website 18 Victim Report.**  On or about March 31, 2023, a victim based in California ("Victim 11") reported that Defendants had sent him a fake "Certificate of Affiliation," claiming a non-existent affiliation between Amazon and "Amazon Digital Pro," containing the Amazon Marks and the purported signatures of an actual Amazon publishing executive.

**s.      Website 19 – amzdigitalpro.com**

100.  The domain used in the web address for Website 19 (amzdigitalpro.com) was registered on May 9, 2023 through registrar GoDaddy.com, LLC.  Public records list the registrant of this domain as "Registration Private."

101.  Website 19 uses the Amazon Marks and other tactics to deceive victims into believing it is affiliated with Amazon.  The deception starts with the domain name, which

[27] Image captured from linkedin.com/company/amazon-digital-pro-us on 8/2/2023.

1   unlawfully uses the Amazon Marks. The domain name uses "AMZ", which when used in

2   conjunction with the sale of products relating to Amazon services, is clearly meant to be an

3   abbreviated version of Amazon's trademarked name. As shown in **Figure 29**[28] below, Website

4   19 is designed to convey a misleading and confusing affiliation with Amazon, making further

5   use of the Amazon Marks. Website 19 features the word "AMZ" set in the upper left corner of

6   the site, along with an obvious knockoff of Amazon's orange smile logo, in a manner

7   reminiscent of Amazon's official website. Website 19 also mimics Amazon's black and orange

8   color scheme.

9   **Figure 29.**



25  [28] Image captured from amzdigitalpro.com on 8/1/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

1
2
3
4
5
6



7

102.    The logo used on Website 19 is also used on the Facebook and LinkedIn pages for

8

Amazon Digital Pro, *see* **Figs. 27-29** above, and a link to amzdigitalpro.com appears on the

9

Facebook page.

10

**t.        Website 20 – amazonpublisherpro.com**

11

103.    The domain used in the web address for Website 20 (amazonpublisherpro.com)

12

was registered on February 23, 2023 by Defendant Alam.  As with Websites 18 and 21,

13

Defendant Nizam's email address (mavianizam96@gmail.com) was used to register this domain.

14

104.    While active, Website 20 used the Amazon Marks and other tactics to deceive

15

victims into believing it was affiliated with Amazon.  The deception started with the domain

16

name, which unlawfully used the Amazon Marks.  As shown in **Figure 30**[29] below, Website 20

17

is designed to convey a misleading and confusing affiliation with Amazon, making further use of

18

the Amazon Marks.  Website 20 features the word "Amazon" paired with an orange arc,

19

reminiscent of Amazon's orange smile logo, set in the upper left corner of the site.  This design

20

intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with

21

the orange smile logo, set in the upper left corner of the website, using a similar font.

22
23
24
25

---

[29] Images captured from amazonpublisherpro.com on 4/26/2023. An earlier image of the site, captured February 27, 2023, advertised an address at 5670 Wilshire Blvd., Suite 1800, Los Angeles, CA 90036.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

**Figure 30.**



u.    **Website 21 – amazonpublishingzone.com**

105.    The domain used in the web address for Website 21 (amazonpublishingzone.com)

was registered on February 3, 2023 under the name "Pennielynn Stiansen."  On information and

belief, Pennielynn Stiansen is an alias and Website 21 was registered by Defendant Nizam since

his email address (mavianizam96@gmail.com), and phone number (+1.8888100680) were used

for the registration. Website 21 shares an IP address with Website 23

(amazonkdppublication.com).

106.    While active, Website 21 used the Amazon Marks and other tactics to deceive victims into believing it was affiliated with Amazon.  The deception started with the domain name, which unlawfully used the Amazon Marks.  As shown in **Figure 31**[30] below, Website 21 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 21 features the word "Amazon" paired with Amazon's smile logo, set in the upper left corner of the site.  This design intentionally mirrors the design of Amazon.com, which also features the word "Amazon" with the smile logo, set in the upper left corner of the website.  Furthermore, the website falsely states that the entity "Partners with Amazon Publishing", which it does not.

**Figure 31.**








v.    **Website 22 – amazonkdpublishing.com**

107.    The domain used in the web address for Website 22 (amazonkdpublishing.com) was registered on February 28, 2023.  Amazon is unaware of the registrant for this domain,

---

[30] Images captured from amazonpublishingzone.com on 2/8/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

because the registrant information is redacted in publicly available records.  Third party

Namecheap is the registrar of the domain used in the web address for Website 22.

108.    While active, Website 22 used the Amazon Marks and other tactics to deceive

victims into believing it is affiliated with Amazon.  The deception starts with the domain name,

which unlawfully uses the Amazon Marks.  As shown in **Figure 32**[31] below, Website 22 is

designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 22 features the words "Amazon" and "Kindle" set in the upper left

corner of the site, along with Amazon's orange smile logo, in a manner reminiscent of

Amazon.com.

**Figure 32**



---

[31] Images captured from amazonkdpublishing.com on 3/1/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

**w.      Website 23 – amazonkdppublication.com**

109.    The domain used in the web address for Website 23 (amazonkdppublication.com) was registered on May 24, 2023.  The registrar for this domain is GoDaddy.com, LLC. Public records list the registrant of this domain as "Registration Private."

110.    Website 23 shares an IP address with Website 21 (amazonpublishingzone.com).

111.    Website 23 uses the Amazon Marks and other tactics to deceive victims into believing it is affiliated with Amazon.  The deception starts with the domain name, which unlawfully uses the Amazon Marks.  As shown in **Figure 33**[32] below, Website 23 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks. Website 23 features the word "KDP" set alongside multiple Amazon Marks—including the word "Amazon" and Amazon's orange smile logo—in the upper left corner of the site, in a manner reminiscent of Amazon.com.  Website 23 also uses an orange and black color scheme like the one used on Amazon.com.

---

[32] Images captured from amazonkdppublication.com on 8/3/2023.

54

**Figure 33.**



112.     On information and belief, Defendants also operate a companion Facebook page associated with Website 23, *see* **Fig. 34** below, which uses multiple Amazon Marks while advertising the same entity name and logo and the web address for Website 23.[33]

---

[33] Image captured from facebook.com/amazonkdppublication on 8/1/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

Figure 34.



x.      **Website 24 – amazonpublishingpartner.com**

113.    The domain used in the web address for Website 24

(amazonpublishingpartner.com) was registered on October 3, 2022 to Defendant Anwar.  On

information and belief, the email indicated for the registrant (subs@wedrivetech.com) is linked

to Defendant TD.

114.    While active, Website 24 used the Amazon Marks and other tactics to deceive

victims into believing it was affiliated with Amazon.  The deception started with the domain

name, which unlawfully used the Amazon Marks.  As shown in **Figure 35**[34] below, Website 24

is designed to convey a misleading and confusing affiliation with Amazon, making further use of

the Amazon Marks.  Website 24 features the word "Amazon" paired with a knockoff version of

Amazon's orange smile logo, set in the upper left corner of the site. This design intentionally

mirrors the design of Amazon.com, which also features the word "Amazon" with the smile logo,

in orange, set in the upper left corner of the website.

**Figure 35.**





---

[34] Images captured from amazonpublishingpartner.com on 10/14/2022.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

115.     **Website 24 Test Purchase.**  In April 2023, an outside investigator working on behalf of Amazon's outside counsel contacted Defendants through Website 24.  During communications with Website 24, the investigator asked whether "you or your company are directly affiliated with Amazon."  Defendants or their agents falsely responded "[y]es, we are a third-party authorized publishers [sic] affiliated with them."  Defendants or their agents also communicated with the investigator using an email address (alex.wilson@amazonprofessionalpublishers.com) that on information and belief, is affiliated with Website 25 (amazonprofessionalpublishers.com), revealing a connection between the two sites.  After confirming that Defendants misrepresent their affiliation with Amazon, the investigator ceased communication.

y.        **Website 25 – amazonprofessionalpublishers.com**

116.     The domain used in the web address for Website 25 (amazonprofessionalpublishers.com) was registered on March 27, 2023.  Amazon is unaware of the registrant for this domain, because the registrant information is redacted in publicly available records.  Third party Namecheap is the registrar of the domain used in the web address for Website 25.

117.     Website 25 uses the Amazon Marks and other tactics to deceive victims into believing it is affiliated with Amazon.  The deception starts with the domain name, which unlawfully uses the Amazon Marks.  As shown in **Figure 36**[35] below, Website 25 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 25 features the word "Amazon" paired with an orange arc, designed to mimic Amazon's orange smile logo, in the upper left corner of the site, in a manner reminiscent of

---

[35] Images captured from amazonprofessionalpublishers.com on 8/2/2023.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

1   Amazon.com.  The word "Amazon" is displayed in a font similar to that used on Amazon.com.

2   Website 25 also uses an orange and black color scheme like the one used on Amazon.com.

3         118.    As noted above, when an investigator contacted Website 24, Defendants or their

4   agents communicated using an email domain associated with Website 25

5   (alex.wilson@amazonprofessionalpublishers.com).

6   **Figure 36.**





COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

### z.    Website 26 – amzkindlepublishing.com

119.    The domain used in the web address for Website 26 (amzkindlepublishing.com) was registered on May 4, 2023 by Defendant Qureshi.

120.    While active, Website 26 used the Amazon Marks and other tactics to deceive victims into believing it is affiliated with Amazon.  The deception starts with the domain name, which unlawfully uses the Amazon Marks.  The domain name also uses "AMZ", which when used in conjunction with the sale of products relating to Amazon services, is clearly meant to be an abbreviated version of Amazon's trademarked name.  As shown in **Figure 37**[36] below, Website 26 is designed to convey a misleading and confusing affiliation with Amazon, making further use of the Amazon Marks.  Website 26 features the words "AMZ" and "kindle" set in the upper left corner of the site, along with Amazon's orange smile logo, in a manner reminiscent of Amazon's official website.  A portion of Website 26's logo also mimics Amazon's black and orange color scheme.

**Figure 37.**

---

[36] Images captured from amzkindlepublishing.com on 8/1/2023. An earlier image of Website 26, captured 5/4/2023, advertised the address of the registrant for domain amazonpublisherpro.com, Defendant Alam, and the registered address for his entity, Defendant DDS.

60



121.    **Website 26 Victim Report.**  On or about July 4, 2023, a victim ("Victim 12")

contacted Amazon to report that she had been defrauded by Defendants.  Victim 12 is an author

who sought to self-publish a book through Amazon, and indicated that she engaged with "MK

Affiliates" after searching for an "Amazon's legitimate publishing services.  Victim 12 believed

she was interacting directly with Amazon, based in part by assurances from Defendants or their

agents.  Victim 12 paid Defendant MKA $8,500 for purported editorial and publication services,

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

which were materially defective, and then sought a refund.  While attempting to get a refund, Victim 12 somehow connected to "Amz Kindle Publishing," whose representative told Victim 12 he could help her get her money back from Defendant MKA.  This representative used an email sharing Website 26's domain (amzkindlepublishing.com).  Victim 12 then received a refund of all but $800, causing her to think that "Amz Kindle Publishing" was part of Amazon. Defendants then induced Victim 12 to pay thousands of additional dollars for purported publication services.  Her payments went to several entities, including Defendants OSCS and DDS.  After paying these funds, Victim 12 learned that "Amz Kindle Publishing" has no affiliation with Amazon.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Trademark Infringement (15 U.S.C. § 1114)

### By Amazon Technologies

122.   Plaintiffs incorporate by reference the factual allegations contained in Sections I– IV as though set forth herein.

123.   Defendants' activities infringe the Amazon Marks.

124.   Plaintiffs advertise, market, and distribute their products and services using the Amazon Marks, and use them to distinguish their products and services from the products and services of others in the same or related fields.

125.   Because of Plaintiffs' long, continuous, and exclusive use of the Amazon Marks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Plaintiffs.

126.   The Subject Websites use the Amazon Marks in commerce in a manner that is intended to cause confusion, mistake, or deception as to source, origin, or authenticity of the Subject Websites and Defendants' services.

127.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the Subject Websites and Defendants' services originate with or are authorized by Plaintiffs, thereby harming Amazon, and innocent victims.

128.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their lack of authority to use the Amazon Marks and the confusion that the use of the Amazon Marks had on consumers as to the source, sponsorship, affiliation, or approval by Plaintiffs of the Subject Websites and services.

129.     Defendants are subject to liability, jointly and severally, for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

130.     As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b). The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without a detailed accounting by Defendants. Alternatively, Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c).

131.     Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for Relief below. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Amazon Marks are unique and valuable property; (b) in addition to the significant harm that Defendants have caused to innocent customers, Defendants' infringement constitutes harm to Plaintiffs' reputation and goodwill such that Plaintiffs could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the services being offered by the Subject Websites; and (d) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

## SECOND CAUSE OF ACTION

### False Affiliation and Designation of Origin (15 U.S.C. § 1125(a))

### By All Plaintiffs

132.   Plaintiffs incorporate by reference the factual allegations contained in Sections I–IV as though set forth herein.

133.   Plaintiffs advertise, market, and distribute their products and services using the Amazon Marks to distinguish their products and services from the products and services of others in the same or related fields.

134.   Because of Plaintiffs' long, continuous, and exclusive use of the Amazon Marks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Plaintiffs.

135.   Plaintiffs have also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images for their websites and products.

136.   Defendants' wrongful conduct includes the use of the Amazon Marks, names, and/or imitation designs (specifically displays, logos, icons, and/or graphic designs virtually indistinguishable from the Amazon designs), and false statements regarding Amazon, and their products or services in connection with Defendants' commercial advertising or promotion.

137.   Defendants have used, and continue to use, the Amazon Marks and/or imitation designs to deceive customers. On information and belief, Defendants' wrongful conduct misleads and confuses their users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, or distributed in connection with the Amazon Marks, names, and imitation visual designs, and wrongfully trades upon Plaintiffs' goodwill and business reputation.

138.   Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

139.    Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

140.    As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b). The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without a detailed accounting by Defendants. Alternatively, Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c).

141.    Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for Relief below. In addition to the significant harm that Defendants have caused to innocent customers, Defendants' acts have caused irreparable injury to Plaintiffs. The injury to Plaintiffs is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

### **THIRD CAUSE OF ACTION**

### **Trademark Dilution (15 U.S.C. § 1125(c))**

### **By Amazon Technologies**

142.    Plaintiffs incorporate by reference the factual allegations contained in Sections I–IV as though set forth herein.

143.    Plaintiffs have exclusively and continuously promoted and used the Amazon Marks. As one of the world's most well-known technology companies, the Amazon Marks have become famous, distinctive, and well-known symbols of Plaintiffs—well before Defendants began using the Amazon Marks in association with their goods or services unaffiliated with Plaintiffs.

144.    The actions of Defendants including, but not limited to, their unauthorized use of the Amazon Marks in commerce to deceive users into believing the Subject Websites and

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955

services being offered are affiliated with Plaintiffs are likely to cause dilution of the Amazon

Marks by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

145.     As a result of Defendants' willful conduct, Plaintiffs are entitled to recover their

actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C.

§ 1117(a). The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and

cannot be ascertained without a detailed accounting by Defendants. Alternatively, Plaintiffs are

entitled to statutory damages under 15 U.S.C. § 1117(c).

146.     Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for

Relief below. In addition to the significant harm that Defendants have caused to innocent

customers, Defendants' acts have caused irreparable injury to Plaintiffs. The injury to Plaintiffs

is and continues to be ongoing and irreparable. An award of monetary damages cannot fully

compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Cybersquatting (15 U.S.C. § 1125(d))

### By Amazon Technologies

147.     Plaintiffs incorporate by reference the factual allegations contained in Sections I–

VI as though set forth herein.

148.     Plaintiffs have exclusively and continuously promoted and used the Amazon

Marks. As one of the world's most well-known technology companies, the Amazon Marks have

become famous, distinctive, and well-known symbols of Plaintiffs—well before any of the

Defendants registered and used the domains used in the web addresses of the Subject Websites.

149.     Defendants registered and used the domains of the Subject Websites with a bad

faith intent to profit from the Amazon Marks by using the Marks to divert consumers from

Plaintiff's online location, to sites operated by Defendants for commercial gain, and creating a

likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

150.    Defendants registered and used the domains of the Subject Websites with a bad faith intent to profit from the Amazon Marks by registering or acquiring multiple similar domain names using Amazon Marks, which are confusingly similar or dilutive of domain names used by Plaintiffs, used to advertise similar services.

151.    Plaintiffs have pursued several UDRP actions to recover some of the listed domain names including those used in the web addresses for Subject Websites; amazonpublishingoffice.com ("Website 1"), amazondirectpublisher.com ("Website 2"), amazonkdppublishingpros.com ("Website 3"), amazonpublishingfirm.com ("Website 4"), and amzprofs.com ("Website 5"), amazonkindledirectpublishing.com ("Website 7"), amazonproinc.com ("Website 11"), amazonprofinc.com ("Website 12"), amazonkindlebookpublishing.com ("Website 13"), amazonkindleproinc.com ("Website 14"), amazonkdppublishers.com ("Website 15"), amazondigitalpro.com ("Website 18"), amazonpublisherpro.com ("Website 20"), amazonpublishingzone.com ("Website 21"), amazonpublishingpartner.com ("Website 24"), and amzkindlepublishing.com ("Website 26"), in order to most expeditiously mitigate the harm to Plaintiffs and the public.

152.    As a result of Defendants' willful conduct, Plaintiffs are entitled to recover their actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a). The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without a detailed accounting by Defendants. Alternatively, Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(d).

153.    Plaintiffs are entitled to have the domains used in the web addresses of the following Subject Websites transferred to them, or in the alternative to have these domains forfeited or cancelled; amazondigitalpublishing.com ("Website 6"), amazondigitalpublisher.com ("Website 8"), amazondigitalpublishers.com ("Website 9"), amazonpublishingsol.com ("Website 10"), amzdigitalpro.com ("Website 19"), amazonkdpublishing.com ("Website 22"),

amazonkdppublication.com ("Website 23"), and amazonprofessionalpublishers.com ("Website 25").

154.     Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for Relief below. In addition to the significant harm that Defendants have caused to innocent customers, Defendants' acts have caused irreparable injury to Plaintiffs. The injury to Plaintiffs is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.     That the Court enter judgment in favor of Plaintiffs on all claims;

B.     That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or participation with them, from:

(i)     Using the Amazon Marks in connection with any customer support services, or sale of goods or services;

(ii)     Registering or using domains that include, are confusingly similar to, or dilutive of, the Amazon Marks;

(iii)     Using any other indication of Plaintiffs' brands in connection with any sale of goods or customer support services;

(iv)     Making any statement of an affiliation or connection to Plaintiffs in connection with any sale of goods or customer support services; or

(v)     Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the subparagraphs above;

C.     That the Court enter an order requiring Defendants to provide Plaintiffs a full and

1  complete accounting of all proceeds from the operation of Subject Websites, including proceeds

2  from customers and an identification of those customers;

3        D.     That Defendants' profits from the tortious activity alleged in this Complaint be

4  disgorged pursuant to 15 U.S.C. § 1117(a);

5        E.     That Defendants be required to pay all actual damages which Plaintiffs have

6  sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages

7  be trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

8        F.     That if greater than actual damages, Defendants be required to pay the maximum

9  statutory damages for their infringement of the Amazon Marks pursuant to 15 U.S.C. § 1117(c);

10        G.     That Defendants be required to pay the costs of this action and the reasonable

11  attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, or

12  otherwise by law;

13        H.     That the court order the transfer of the domains used in the web addresses of the

14  Subject Websites 6, 8-10, 19, 22, 23, and 25 to the Plaintiffs; and

15        I.     That the Court grant Plaintiffs such other, further, and additional relief as the

16  Court deems just and equitable.

17

18        DATED this 30th day of October, 2023.

19                             DAVIS WRIGHT TREMAINE LLP
                            Attorneys for Plaintiffs

20

21                             By: */s/ John D. Freed*_____
                           John D. Freed (Bar No. 261518)

22                             DAVIS WRIGHT TREMAINE LLP
                           505 Montgomery Street, Suite 800

23                             San Francisco, CA 94111
                           Telephone: (415) 276-6500

24                             Facsimile: (415) 276-6599

25                             Bonnie MacNaughton (Bar No. 107402)

69

1                         DAVIS WRIGHT TREMAINE LLP

920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

Emily Goodell (*pro hac vice forthcoming*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8287
Facsimile: (206) 757-7700

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.
4862-8878-7596v.1 0051461-005955