Bonnie MacNaughton (Bar No. 107402)
Emily Goodell (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:     (206) 622-3150
Facsimile:     (206) 757-7700
Email:         bonniemacnaughton@dwt.com
               emilygoodell@dwt.com

John D. Freed (Bar No. 261518)
Jean M. Fundakowski (Bar No. 328796)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Floor 23
San Francisco, CA 94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:         jakefreed@dwt.com
               jeanfundakowski@dwt.com

Attorneys for Plaintiffs AMAZON.COM, INC.
and AMAZON TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation, and AMAZON TECHNOLOGIES, INC., a Nevada corporation,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>UMER WASIM, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 3:23-cv-05580-TLT<br><br>**DECLARATION OF JUDY LATIMORE IN SUPPORT OF PLAINTIFFS AMAZON.COM. INC. & AMAZON TECHNOLOGIES, INC.'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS (1) VTLOGODESIGN, INC.; (2) MK AFFILIATES, INC.; (3) ALI ALAM; (4) DYNAMIC DIGITAL SOLUTIONS LLC; (5) MEHWASH MUNIR; (6) ONE STOP COMPUTER SERVICES LLC; (7) MUHAMMAD ZUBAIR KHAN; (8) TECHTURE INC.; (9) MUHAMMAD MUDASSAR ANWAR; (10) TECH DRIVE PVT LLC; (11) ASHHAR RAWOOF; (12) SMART STARTUP SOLUTIONS; (13) MUHAMMAD USMAN KHAN; (14) YASIR AGAR; (15) MUHAMMAD SHIRAZ QURESHI; AND (16) MAVIA NIZAM**<br><br>**Hearing Date:**　December 10, 2024<br>**Time:**　　　　2:00 pm<br>**Location:**　　San Francisco<br>　　　　　　　Courtroom 09, 19th Flr<br><br>Complaint filed:　October 30, 2023 |

I, JUDY LATIMORE, declare as follows:

1. I am over the age of eighteen and am competent to testify as to the matters set forth herein. I have personal knowledge of the facts in this declaration, and base this declaration on my personal knowledge.

2. I make this Declaration in support of Plaintiffs' Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) as to Defendants (1) VTLogodesign, Inc.; (2) MK Affiliates, Inc.; (3) Ali Alam; (4) Dynamic Digital Solutions LLC; (5) Mehwash Munir; (6) One Stop Computer Services LLC; (7) Muhammad Zubair Khan; (8) Techture Inc.; (9) Muhammad Mudassar Anwar; (10) Tech Drive Pvt LLC; (11) Ashhar Rawoof; (12) Smart Startup Solutions, LLC.; (13) Muhammad Usman Khan; (14) Yasir Agar; (15) Muhammad Shiraz Qureshi; and (16) Mavia Nizam ("Defendants"). The following facts are personally known by me to be true and, if called and sworn as a witness, I could and would competently testify as follows.

3. I am a customer of Amazon.com, Inc. ("Amazon").

4. I am a resident of Oklahoma.

5. After researching publishing services to self-publish my novel, I decided to publish through Amazon.

6. In or around early August 2022, I searched on Google and typed "publishing services on Amazon" in the search bar. Amazon Digital Publishing, ("Website") appeared as one of the results with a URL "amazondigitalpublishing.com." I clicked on the link and visited the Website.

7. At the time I visited the Website, it appeared to me that I was on Amazon's official site. For example, I observed a logo on the Website that appeared to be Amazon's logo with an arrow at the bottom of the logo. The Website had an orange and black color scheme similar to Amazon's official site. These visuals reassured me that I was interacting with Amazon.

8. When I arrived at the Website, a chat message appeared on my screen. I chatted with an individual, named Christine Collins, who represented to me that Amazon Digital Publishing would assist me with publishing my book.

9. I gave Ms. Collins my phone number while chatting with her in the chat box. She then called me on my cellphone and represented to me that Amazon Publishing Services would provide me a discounted price of $1,599 for various publishing services.

10. On the call, Ms. Collins said that she was a part of Amazon. But, when I asked her about Amazon Digital Publishing's address, she appeared hesitant to provide an answer. She eventually provided me an address of 5201 Great America Parkway Suite 320, Santa Clara, CA 95054.

11. After our discussion on the above-described call, Ms. Collins emailed me a Non-Disclosure Agreement ("NDA"). A true and correct copy of Ms. Collins's email, which lists her title as "Content & Publishing Consultant" for Amazon Digital Publishing, is attached hereto as **Exhibit A**. The attached NDA had, what appeared to me to be Amazon's logo with an orange arrow at the bottom of the logo running from left to right. Ms. Collins's title was listed as a "Senior Business Analyst Amazon Digital Publishing" in the NDA. A true and correct copy of the NDA is attached as **Exhibit B** hereto.

12. Using my credit card, on or around August 4, 2022, I paid $1,599 in exchange for the services listed in the NDA. These services included editing, proofreading, typesetting, formatting, in addition to publishing my book on 5 platforms. These platforms included Amazon, Kindle, Google Books, iBooks, and Barnes & Noble. See Ex. B.

13. A charge subsequently appeared on my credit card statement for $1,599 paid to "AMAZON DIGITIAL PUBLISH 188-84072583 FL." A true and correct copy of my credit card statement showing this charge is attached as **Exhibit C** hereto.

14. After making the above-described payment to Amazon Digital Publishing, a series of ten charges (ranging from $0 to $5) were made to the credit card I had used for that payment. I had not made or authorized any of these charges. Because I am extremely careful about disclosure of my credit card number, and only use my card for specific purposes, I believed these seemingly fraudulent charges may have had something to do with Amazon Digital Publishing.

15. I then called the company that charged my credit card on behalf of Amazon Digital Publishing, using the number that appeared on my credit card statement (18884072583). See

**Exhibit D**. An individual answered my call on behalf of "VT Logo Designs," but then hung up when I asked about the charge on behalf of Amazon Digital Publishing.

16. After the experiences described above, I believed I had been duped and I did not want to be in business with Amazon Digital Publishing. I then wrote to Ms. Collins and requested a refund of the $1,599 charge to my credit card as I no longer wanted the service. A true and correct copy of this email is attached as **Exhibit D** hereto. Prior to this time, I had believed I was corresponding with an Amazon representative, and I was horrified to learn that I had been corresponding with an unrelated third party.

17. I subsequently reported this incident to Amazon, and have provided Amazon with the facts and documents surrounding the incident.

18. Later, I did receive a refund from Amazon Digital Publishing to my credit card.

I declare under penalty of perjury under laws of the United States that the foregoing is true and correct. Executed this 12th day of September, 2024 in  TULSA , OKLAHOMA

_____
JUDY LATIMORE

# EXHIBIT A

From: <christine@amazondigitalpublishing.com>
Date: Wed, Aug 3, 2022 at 11:22 AM
Subject: Non- Disclosure Agreement - Amazon Digital Publishing
To: <███████████████>
**Attachments:** NDA - Judy.pdf

Hello Judy,

Great chatting with you earlier.

PFA the NDA as discussed. I will be in touch with you at 12:30 Pm your time.

Looking forward to working with you.

**Christine Collins**
**Content & Publishing Consultant**

**Email-** christine@amazondigitalpublishing.com

**Contact-** (323) 403-4802



--
Best Regards,

Judy Latimore
Phone: ███████████
Email: ███████████
**STAY SAFE; STAY BLESSED!!!**

*Magnolia: Symbol of PERSEVERANCE*

1

# EXHIBIT B



## NON-DISCLOSURE AGREEMENT

THIS AGREEMENT (the "Agreement") is entered into on this 08/03/2022 by and between **Amazon Digital Publishing**, located at **5201 Great America Pkwy Unit 320 Santa Clara, CA 95054, USA** (the" Disclosing Party"), **Judy Latimore** (the "Receiving Party").

**RECITALS:**

- Our book publishing package includes:

  - Publishing on the top 5 Bestselling Book Platforms; Amazon, Kindle, Google Books, iBooks and Barnes & Noble.

  - Editing, Proofreading, Formatting and Typesetting.

  - Optional Book Cover

  - Adding additional content if required

- We will publish 3 versions of the book:

  - Downloadable E-Book (So the Book will be converted to an eBook as well)

  -  Print Ready, Downloadable PDF

- Value Added Service

  - Dedicated Account Manager

  - With 100% Ownership Rights

  - 24/7 access to online portal

  - Unlimited Revisions.

WHEREAS, the Parties have requested certain information regarding each other in connection with inquiry into the feasibility of possible business arrangements between them, WHEREAS, the Parties acknowledge the confidential and proprietary nature of the materials to be furnished, WHEREAS, the parties are willing to disclose such confidential and proprietary information to each other provided that each party agrees to hold and keep such information as confidential and to not use the information for any purpose other than evaluating a potential business arrangement.

NOW THEREFORE, the Parties agree as follows:

### 1. Confidential Material

Each party agrees that all information relating to the other that is known to be confidential or proprietary, or which is clearly marked as such, and is furnished to it or to its officers, employees, or agents (collectively the "Receiving Party") by the other party (the "Disclosing Party"), whether written or delivered, visually or orally, will be deemed to be confidential information ("Confidential Material"). The term "Confidential Material" does not include information that (a) was previously in the possession of

the Receiving Party and not the subject of another confidentiality agreement, (b) becomes generally available to the public as a result of a disclosure by a source other than the Receiving Party, or (c) becomes available to the Receiving Party on a non-confidential basis from a source other than the Disclosing Party or its advisors, provided that the Receiving Party reasonably believes that such source is

not bound by a confidentiality agreement with respect to such information.

## 2. Use and Treatment of Confidential Material

Each party hereby agrees that it will use any Confidential Material received by it solely for purposes of evaluating whether the parties should enter into a business arrangement and that such information will be kept confidential by the Receiving Party.

Notwithstanding the foregoing, the Receiving Party may disclose Confidential Material (a) to any representative and agent of the Receiving Party (collectively the "Receiving Party's Representatives") for the sole purpose of evaluating the potential business arrangement, and provided that the

representative or agent agrees to be bound to this Agreement, or (b) to the extent required to comply with any law, any order, or the rules or regulations of any governmental agency or authority, or any judicial authority; provided, however, that prior to any such disclosure, the Receiving Party shall notify the Disclosing Party of the Receiving Party's intent to disclose such information so that the Disclosing Party may seek a protective order to prevent the disclosure of such information.

The Receiving Party shall be responsible for enforcing the confidentiality of the Confidential Information, and will take reasonable security precautions, at least as great as the precautions it takes to protect its own confidential information, to keep confidential the Confidential Material, and shall take such actions, legal or otherwise, as may be necessary to prevent disclosure of the Confidential Information by any of the Receiving Party's Representatives.

## 3. Return of Confidential Information

Upon receipt of a written request from the Disclosing Party, the Receiving Party will return all Confidential Material disclosed to it (regardless of the form in which such information was disclosed), including all compilations, copies, notes, summaries or abstracts of such Confidential Material, and will erase from computer storage (including all related or peripheral storage devices) any and all images, compilations, copies, summaries or abstracts of such Confidential Material.

## 4. Remedies

In the event that the Receiving Party or any of the Receiving Party's representatives disseminates or releases any Confidential Material except as provided above, such disclosure, dissemination or release will be deemed a material breach of this Agreement and the Disclosing Party may demand prompt return of all Confidential Material previously provided to Receiving Party. Each of the parties agrees that because of the unique nature of the Confidential Material, the Disclosing Party would suffer irreparable damage in the event of a breach of this Agreement. Accordingly, each party expressly agrees that the Disclosing Party will be entitled to injunctive and/or other equitable relief, including, but not limited to, specific performance, and hereby waives the right to any bond in connection therewith. The provisions of this paragraph do not alter or affect any other legal rights or remedies the Disclosing Party may have under federal or state law.

### 5. Binding Effect

This Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

### 6. Non-assignment

Neither party will assign this Agreement, in whole or in part, without the prior written consent of the other party, and such consent will not unreasonably be withheld.

### 7. Arbitration

Any dispute arising under this Agreement will be subject to binding arbitration by a single Arbitrator with The American Arbitration Association (AAA), in accordance with its relevant industry rules, if any. The parties agree that this Agreement will be governed by and construed and interpreted in accordance with the laws of the State of the arbitration will be held in. The Arbitrator will have the authority to grant injunctive relief and specific performance to enforce the terms of this Agreement. Judgment on any award rendered by the Arbitrator may be entered in any Court of competent jurisdiction.

### 8. Severability

If any term of this Agreement is found to be unenforceable or contrary to law, it will be modified to the least extent necessary to make it enforceable, and the remaining portions of this Agreement will remain in full force and effect.

### 9. Waiver and Modification

The waiver by any party of any breach of covenant will not be construed to be a waiver of any succeeding breach or any other covenant. All waivers must be in writing, and signed by the party waiving its rights. This Agreement may be modified only by a written instrument executed by authorized representatives of the parties hereto.

### 10. Entire Agreement

This Agreement, together with any attachments referred to herein, constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements, proposals, negotiations, representations or communications relating to the subject matter. Both parties acknowledge that they have not been induced to enter into this Agreement by any representations or promises not specifically stated herein.



IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized representatives.

Amazon Digital Publishing

*Christine Collins*

By (Sign) _____          By (Sign) _____

Name: Christine Collins                    Client:

Title: Sr. Business Analyst Amazon Digital Publishing          Author Date: 08/03/2022



# EXHIBIT C

## Transactions

| Transaction Date | Posting Date | Description | Points | Amount |
|---|---|---|---|---|
| **Payments** | | | | |
| Aug 14 | Aug 14 | Payment Received | N/A | -$628.32 |
| Total payments for this period | | | N/A | -$628.32 |
| **Other Credits** | | | | |
| Aug 04 | Aug 12 | ONLYFANS 8886880458 FL | N/A | -$5.00 |
| Aug 11 | Aug 15 | AMAZON DIGITAL PUBLISH 188-84072583 FL | N/A | -$1,599.00 |
| Total other credits for this period | | | N/A | -$1,604.00 |
| **Purchase Activity for JUDY** | | | | |
| | | No Transaction Activity at This Time | | $0.00 |
| **Purchase Activity for JUDY** | | | | |
| Aug 01 | Aug 02 | | 259 | |
| Aug 04 | Aug 05 | AMAZON DIGITAL PUBLISH 188-84072583 FL | 1,599 | $1,599.00 |
| Aug 04 | Aug 07 | ONLYFANS 8886880458 FL | 5 | $5.00 |
| Purchase activity for JUDY | | | 1,863 | $1,733.43 |
| Total purchase activity for this period | | | 1,863 | $1,733.43 |

▶ To see activity after this statement period, visit BarclaysUS.com

## Fees and Interest

| Transaction Date | Posting Date | Description | Amount |
|---|---|---|---|
| **Fees Charged** | | | |
| | | No fees charged for this period | $0.00 |
| Total fees for this period | | | $0.00 |
| **Interest Charged** | | | |
| | | No interest charged for this period | $0.00 |
| Total interest for this period | | | $0.00 |

▶ continued on page 3

# EXHIBIT D

From: **Judy Latimore** <█████████████>
Date: Mon, Aug 8, 2022 at 3:39 PM
Subject: CHARGES AND MY CONTACT INFORMATION
To: <christine@amazondigitalpublishing.com>

Hi, Christine,

You didn't text me after our conversation on Friday afternoon.

FYI, this morning I called the number for the company that charged my credit card. This is the number I gave you on Friday. Someone answered from VT Logo Designs. She hung up on me when I asked about the charge on behalf of Amazon Digital Publishing. Why would she do that? This definitely erases trust.

Please reverse the charge of $1599 to my credit card by the end of today's business, and remove all of my contact information from your system; otherwise, I'll have to file a dispute claim with my bank.

I'm sorry our business arrangement did not work out.


--
Best Regards,

Judy Latimore
Phone: ███████████
Email: ████████████████
**STAY SAFE; STAY BLESSED!!!**

   *Magnolia: Symbol of PERSEVERANCE*


--
Best Regards,

Judy Latimore
Phone: ███████████
Email: ████████████████
**STAY SAFE; STAY BLESSED!!!**

*Magnolia: Symbol of PERSEVERANCE*

1