<div style="text-align:center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

</div>

|  |  |
|---|---|
| AMAZON.COM INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UMER WASIM, *et al.*,<br><br>　　　　　Defendants. | Case No.  23-cv-05580-TLT (RMI)<br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT; MOTION TO SET ASIDE DEFAULT & DISMISS**<br><br>Re: Dkt. No. 68, 77 |

Now pending before the court is a Motion for Default Judgment (dkt. 68) filed by Plaintiffs Amazon.com, Inc. (a Delaware corporation) and Amazon Technologies, Inc. (a Nevada corporation) (hereafter collectively referred to as "Amazon"), against Defendants (1) VTLogodesign, Inc. (a Florida corporation); MK Affiliates, Inc. (a Florida corporation); (3) Ali Alam (and individual residing in Ashburn, Virginia); (4) Dynamic Digital Solutions, LLC (a Virginia limited liability company); (5) Mehwash Munir (and individual residing in Ashburn, Virginia); (6) One Stop Computer Services, LLC (a Virginia limited liability company); (7) Muhammad Zubair Khan (an individual residing in Los Angeles, California); (8) Techture, Inc. (a California corporation with a registered address in Los Angeles); (9) Muhammad Mudassar Anwar (an individual residing in Scarsdale, New York); (10) Tech Drive Pvt, LLC (a New York limited liability company registered at an address in Scarsdale, New York); (11) Ashhar Rawoof (an individual residing in Houston, Texas); (12) Smart Startup Solutions, LLC (an Illinois limited liability company); (13) Muhammad Usman Khan (an individual reported to be residing in the country of Pakistan, but who has represented himself as living in Fairfax, Virginia); (14) Yasir Agar (an individual residing in the country of Pakistan); (15) Muhammad Shiraz Qureshi (an

<div style="text-align:center; writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

United States District Court
Northern District of California

individual residing in the country of Pakistan); and (16) Mavia Nizam (an individual residing in the country of Pakistan) – (hereafter collectively referred to as "Defendants")[1]. *See id.* at 2; *see also* Compl. (dkt. 1) at 4-5. The Motion was referred to undersigned for the preparation and filing of a report and recommendation. *See* Order (dkt. 69) at 1. Thereafter, Plaintiffs' Motion came on to be heard on November 19, 2024, a notice of which was served on Defendants (*see* Fundakowski Decl. (dkt. 72) at 2-5), however, no Defendants appeared. Just over a month after that hearing, on December 20, 2024, Defendants Muhammad Mudassar Anwar and Tech Drive PVT LLC (hereafter referred to collectively as the "New York Defendants") entered an appearance through counsel and filed a motion to set aside the default and to dismiss for lack of personal jurisdiction. *See generally* N.Y. Defs.' Mot. (dkt. 77) at 3-10, and Anwar Decl. (dkt. 78) at 2-3. In light of which, the undersigned asked for additional briefing (*see* Order (dkt. 80) at 1-2), that was filed in due course (*see* dkts. 82, 85, 86). The New York Defendants' Motion was then also referred to the undersigned for a report and recommendation. *See* Order (dkt. 87) at 1. For the reasons stated below, the undersigned recommends that Amazon's Motion for Default Judgment as to all Defendants be granted, and that the New York Defendants' Motion be denied.

## FACTUAL BACKGROUND

### *Amazon's Trademarks*:

Amazon owns and operates the website at Amazon.com and, along with its subsidiary (Amazon Technologies, Inc.), it is the owner of the intellectual property rights (including a number of registered trademarks) at the heart of this action. *See* Pls. Mot. (dkt. 68) at 11; *see also* Compl. (dkt. 1) at ¶ 5.[2] Amazon relies on its name, and its registered trademarks, to distinguish

---

[1] The sixteen individuals and entities listed herein do not include two non-defaulted Defendants (Umer Wasim and Teknobyl Digitall LLC) who have participated in this action (*see* Answer (dkt. 58) at 2-14; *see also* Joint Status Report (dkt. 81) at 2 (wherein it was reported that the matter has been resolved through a written settlement agreement as to Defendants Wasim and Teknobyl Digital LLC)).

[2] Amazon's Motion for Default Judgment (dkt. 68) sets forth a detailed factual basis underlying the relief it seeks. The Motion contains detailed citations to the Complaint (dkt. 1). For a proper rendition of the procedural posture of the case, the undersigned will occasionally alternate between citing to the Complaint and to Amazon's subsequent filings and declarations. However, except where it would be otherwise permissible, the undersigned will generally only rely on the allegations in the Complaint because, at the default judgment stage, while the court takes the well-pleaded factual allegations in the complaint as true, "*necessary* facts not contained in the pleadings, and claims which are legally insufficient, are not established

2

itself and its products and services from others. Pls.' Mot. (dkt. 68) at 11. Each page of Amazon's website contains its trademarked logo which consists of the word "amazon" in lower-case white text above an orange arrow in the shape of a smile, all of which sit atop a background of black and squid ink (dark blue). *See* Compl. (dkt. 1) at ¶ 30. Amazon also owns registered trademarks for: "Amazon"; "amazon" (in lower-case black font, above a black arrow in the shape of a smile; Amazon.com; a black arrow in the shape of a smile; "Kindle" (both by itself and above a black arrow in the shape of a smile; and "amazon kindle" with "amazon" in lower-case with a black font above an orange arrow in the shape of a smile, and "kindle" in lower-case with an orange font). *Id*. at ¶ 35. These trademarks (collectively referred to as the "Amazon Marks" or "the Marks") are used by Amazon to conduct its business through its domain names, on its websites, and in its publishing businesses – Amazon Publishing ("APub") and Kindle Direct Publishing ("KDP"). *Id*. at ¶ 37. Each of the Amazon Marks are the subject of valid U.S. registrations that have been used exclusively and continuously by Amazon without ever having been abandoned. *Id*. at ¶ 36.

### *Amazon's Publishing Business*:

As to Amazon's publishing business – APub and KDP are popular services through which Amazon helps authors publish or self-publish their creative works. *Id*. ¶ 2. Founded in 2009, APub advertises and operates the website at amazonpublishing.amazon.com. *Id*. at ¶¶ 31-32. It is Amazon's in-house trade publisher of fiction, nonfiction, as well as young adult and children's books; Amazon also publishes the works of emerging, bestselling, and critically-acclaimed authors in digital, print, and audio formats and, thus far, it has helped its author-customers receive more than 450 award nominations, while causing a number of them to reach more than one million readers, and while helping over a thousand of them to earn more than $50,000 each from their writing. *Id*. at ¶ 31. APub's editors acquire titles through 17 U.S. imprints (an imprint is a specific brand or trade name used by a publishing company to release a line of books), another 5 in the United Kingdom, and 5 in Germany – a process which involves negotiating terms with the author which grants APub the right to publish, market, and distribute the author's book in exchange for a

---

by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (emphasis added).

United States District Court
Northern District of California

United States District Court
Northern District of California

flat fee payment or royalties from the book's sales. *Id*. APub's various divisions (*i.e.*, editorial, sales, marketing, publicity, design, production, user research, product innovation, author services, and software engineering) combine and coordinate to help Amazon's author-customers share their stories with a global audience. *Id*.

As to the Kindle Direct Publishing business, KDP advertises and operates the website at kdp.amazon.com. *Id*. at ¶ 35. This service allows authors to self-publish books in print and digital formats for free, permitting them to reach millions of readers in over a dozen Amazon marketplaces and 175 countries. *Id*. at ¶ 33. KDP has helped its author-customers reach new readers, pursue careers in self-publishing, and win numerous awards, including the Romance Writers of America RITA Award, the highest award of distinction in romance fiction. *Id*. More than 269,000 people follow Amazon's KDP Facebook page and more than 78,800 people follow Amazon's KDP X (formerly known as Twitter) social media feed. *Id*. KDP's author-customers control the rights to their titles and can make changes to their books at any time. *Id*. at ¶ 34. They can set up an eBook for publication within minutes, and within 72 hours the eBook appears for sale on Amazon's Kindle Store. *Id*. When publishing, Amazon's author-customers select a royalty plan, which determines what percentage of the amounts earned from sales are to be received by the author. *Id*. KDP offers a number of free services to its author-customers including a program called "KDP Select" that allows them to reach additional readers through the Kindle Unlimited subscription service which, in turn, enables them to take advantage of Amazon and Kindle promotions on their titles, and gives them access to promotional tools such as free giveaway days and time-based price promotions. *Id*. The KDP Select Global Fund has provided more than $2.8 billion dollars in royalties to participants in the KDP Select program for their participation in Kindle Unlimited. *Id*. An author listing an eBook can gift a redemption code for a free copy and can create a free Author Page. *Id*. Other related services that KDP offers to its author-customers for free include providing an International Standard Book Number ("ISBN"), which is required to publish a paperback or hardcover book, various free tools for creating book covers, templates, front, body and back matter elements and Kindle Create software, a free interior formatting tool. *Id*. KDP author-customers can enroll for free in a program called "Expanded Distribution," which makes paperbacks that are available on Amazon.com also available to

1    distributors, allowing booksellers and libraries to order them. *Id.* Amazon also offers advertising for

2    KDP books on a cost-per-click basis. *Id.*

3    ***Defendants' Scheme***:[3]

4    Defendants are a number of individuals and entities based in the United States and Pakistan

5    who operated a scam targeting Amazon's would-be author-customers and inducing them to purchase

6    fraudulent services. *Id.* at ¶ 3. Defendants recruited their victims through a number of websites (the

7    "scam websites") that made extensive use of Amazon's trademarks. *Id.* The list of scam websites set

8    forth in the Complaint numbered 26, however, scam websites 1 through 5 were operated by

9    Defendants Umer Wasim and Teknobyl Digital LLS – the two non-defaulted Defendants who have

10   resolved this case (*see* supra n. 1) – thus, only 21 of the 26 scam websites set forth in the Complaint

11   are the subject of Amazon's Motion; additionally, only 2 of the 21 scam websites were still active at

12   the time Plaintiffs filed their Motion. *See* Pls.' Mot. (dkt. 68) at 15 nn.1 & 2.

13   Amazon alleges that Defendants' scam websites confused authors as to their affiliation by

14   misrepresenting their association with Amazon, KDP, and APub in a number of ways – including by

15   sending author-customers documents which contained the forged signatures of Amazon executives.

16   *See* Compl. ¶¶ 3, 63, & fig. 13 (showing an image of a fake certificate sent to a victim purportedly

17   signed by APub's head of publishing declaring that Amazon certifies that Amazon Digital Publishing

18   –scam website 6 – is "the best marketing agency for Kindle books and author reputation online.").

19   Amazon further alleges that a number of its would-be customers were duped into believing that they

20   were working with Amazon, causing them to pay Defendants substantial sums of money for grossly

21   inadequate or never-performed fraudulent services. *Id.* ¶ 3. While some of these defrauded individuals

22   managed to obtain some money back in refunds, many did not – thus, Amazon alleges that (in addition

23   to the harm visited upon Amazon's reputation and the goodwill it has developed in the marketplace

---

[3] At times, Amazon collectively refers to the totality of the activities of the various Defendants in this case as a "scheme." *See* Compl. (dkt. 1) at ¶¶ 1, 42; *see also* Pls.' Mot. (dkt. 68) at 15-16. While it does not make any difference when adjudicating either the merits of Amazon's claims as pleaded in the Complaint, or the substance of its Motion for Default Judgment – the undersigned will note that Amazon's Complaint has not expressly alleged a clear overarching conspiracy or unified and total coordination by and between all Defendants. Instead, it appears that Amazon has only expressly alleged that a number of individuals (along with their associated entities) were simultaneously engaged in substantially similar schemes – with *some* confederation and overlap – of which Amazon and its would-be customers were common victims.

United States District Court
Northern District of California

1    described above) Defendants' conduct has also caused significant harm to the author and self-publisher

2    community. *Id.*

3        Amazon alleges that, in furtherance of this scheme (or schemes), Defendants have used the

4    Amazon Marks in their domain names and on their scam websites in order to divert victims from

5    Amazon's actual websites to Defendants' scam websites which purport to offer services to help

6    authors create, edit, and publish their works through APub or KDP. *Id.* at ¶ 37. The scam websites also

7    prominently display references to Amazon including: "Looking to Publish Your Book on Amazon?";

8    "Amazon KDP Focused Book Marketing Services"; and "Customizable Publishing Packages by

9    Amazon Professional Publishers" to further the wrongful appropriation of Amazon's trademarks and

10   goodwill in order to deceive Amazon's would-be customers into doing business with Defendants

11   instead. *Id.* The scam websites also reportedly use chat boxes that pop up on their sites and advertise

12   phone numbers to call where Defendants or their agents make false representations about their

13   affiliation with Amazon and provide documentation with false and misleading representations of

14   affiliation with Amazon that deceive Amazon's would-be customers into believing Defendants are

15   affiliated with Amazon. *Id.*

16       Amazon reports that it obtained registrant information for some of the 26 scam websites by

17   filing multiple Uniform Domain-Name Dispute-Resolution Policy ("UDRP") actions, through which it

18   was also able to unmask the otherwise confidential identities of the registrants through third-party

19   subpoenas issued to the affiliated registrars "NameCheap" and "GoDaddy." *Id.* at ¶ 38; *see also* Pls.'

20   Mot. (dkt. 68) at 16. Amazon alleges that many of the scam websites use the same service providers,

21   IP addresses, website graphics and design, and verbiage, and advertise overlapping physical addresses,

22   while Defendants' billing entities use overlapping scam websites and entity names. *See* Compl. at ¶

23   39.[4]

24   //

25

26   _____

27   [4] As mentioned above (*see* supra n. 3), while Amazon's Complaint has stopped short of alleging full
     coordination by and between all or most Defendants regarding the claims and allegations in the Complaint –
     the facts uncovered by Amazon's subsequent third-party subpoena practice make it difficult for the
28   undersigned to conclude otherwise.

***Facts Related to Individual Non-Appearing Defaulted Defendants***:

As mentioned, of the 18 Defendants named in the Complaint, Umer Wasim and Teknobyl Digital LLC have appeared (*see* Answer (dkt. 58)) and resolved the case (*see* dkt. 81). As to the other 16 Defaulting Defendants, the Clerk of Court noticed the entry of default as to 12 of them on February 14, 2024 (*see* dkt. 52)[5] and, as to the remaining 4, a notice of default was entered on May 20, 2024 (*see* dkt. 62).[6] Two Defendants that were the subject of the February 14, 2024, notice of entry of default (Muhammad Mudassar Anwar and Tech Drive Pvt LLC – the New York Defendants), appeared through counsel more than 10 months after the entry of default and moved to set aside the default and argued that the case against them should be dismissed for lack of personal jurisdiction. *See* N.Y. Defs.' Mot. (dkt. 77) at 1-12.

**Muhammad Usman Khan**:

Amazon has reason to believe that Mr. Khan is residing in the country of Pakistan. *See* Goodell Decl. (dkt. 61-1) at ¶ 13. With the permission of the Presiding Judge,[7] Amazon served Mr. Khan via email on March 8, 2024, and, on the same date, Plaintiffs' counsel received a receipt indicating that the email had been delivered and opened for reading by the recipient. *See* Goodell Decl. (dkt. 61-1) at ¶ 21; *see also id.* at Exh. A-C (dkt. 61-2) at 2-9. Amazon has alleged that Mr. Khan owned, operated, or was otherwise affiliated with 4 of the scam websites that intentionally and willfully used Amazon Marks to deceive users into believing they were doing business with Amazon, with APub, or with KDP – to wit: scam website 6 (*see* Compl. (dkt. 1) at ¶ 61); scam website 7 (*id.* at ¶ 62); scam website 22 (*id.* at ¶ 63); and scam website 26 (*id.* at ¶ 121). Amazon

---

[5] This group consisted of: VTLogodesign, Inc., a Florida corporation; MK Affiliates, Inc., a Florida corporation; Ali Alam; Dynamic Digital Solutions LLC, a Virginia limited liability company; Mehwash Munir; One Stop Computer Services LLC, a Virginia limited liability company; Muhammad Zubair Khan; Techture Inc., a California corporation; Muhammad Mudassar Anwar; Tech Drive Pvt LLC, a New York limited liability company; Ashhar Rawoof; and, Smart Startup Solutions, LLC, an Illinois limited liability company.

[6] This group consisted of: Muhammad Usman Khan; Yasir Agar; Muhammad Shiraz Qureshi; and Mavia Nizam.

[7] Indeed, Judge Thompson authorized alternative service, via electronic mail, for Defendants Muhammad Usman Khan, Yasir Agar, Muhammad Shiraz Quereshi, and Mavia Nizam. *See* Order (dkt. 57) at 1.

United States District Court
Northern District of California

1    alleges that scam websites 6, 7, 22, and 26 infringed Amazon Marks 1, 2, 3, 6, and 8.[8] On this

2    basis, as provided for in 15 U.S.C. § 1117(c), Amazon seeks $500,000 in statutory damages from

3    Mr. Khan for the willful infringement of each of the 5 Amazon Marks, for a total statutory

4    damages sum for trademark infringement of $2,500,000. *See* Pls.' Mot. (dkt. 68) at 17.

5    *VTLogoDesign, Inc ("VTL")*:

6        VTL is a Florida corporation which appears to have been administratively dissolved by the

7    Florida Secretary of State on September 22, 2022. *See* Goodell Decl., Exh. A, (dkt. 46-2) at 2-3.

8    VTL was served by substitute service on the Florida Secretary of State, as provided for by Florida

9    law, on December 19, 2023, and service of process was accepted by the Florida Secretary of State

10   on December 21, 2023. *See id.* at 14. Amazon has alleged that VTL owned, operated, or was

11   otherwise affiliated with 7 of the scam websites that intentionally and willfully used Amazon

12   Marks to deceive users into believing they were doing business with Amazon, APub, or KDP – to

13   wit: scam websites 6, 7, 8, 9, 10, 22, and 26, which infringed Marks 1-3, 6, and 7.[9] On this basis,

14   pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages from VTL for the willful

15   infringement of each of the 5 Amazon Marks set forth above, for total statutory damages for

16   trademark infringement of $2,500,000. *See* Pls.' Mot. (dkt. 68) at 18.

17   *MK Affiliates, In. ("MKA")*:

18       MKA, is another Florida corporation which was also administratively dissolved on

19   September 22, 2023, for its failure to file an annual report. *See* Goodell Decl., Exh. D, (dkt. 46-2)

20   at 19-20. MKA was served by substitute service on the Florida Secretary of State on December 19,

21   2024, as provided for by Florida law, and service of process was accepted by the Florida Secretary

22   of State on December 21, 2023. *See id.* at 35. Amazon has alleged that MKA owned, operated, or

23   was otherwise affiliated with 4 scam websites that intentionally and willfully used Amazon Marks

24

25   [8] Going forward, the undersigned will simply refer to the Amazon Marks that were infringed through the use
     of each of the scam websites using Amazon's numeration system which Amazon has set forth in detail in the
26   Complaint, in its Motion for Default Judgment, and in Exhibit E to the Declaration of John D. Freed. *See*
     Pls.' Mot. (dkt. 68) at 13 fig. 2; *see also* Compl. (dkt. 1) at ¶ 35; *see also* Freed Decl. (dkt. 68-1) at 30-33.

27   [9] *See* Compl. at ¶¶ 61; 62; 68, fig. 15; 70, fig. 16; 72, fig. 17; 108; and 121; *see also* Freed Decl. (dkt. 68-1)
     at 30-33.

28

United States District Court
Northern District of California

to deceive users into believing they were doing business with Amazon, APub, or KDP – that is: scam websites 6, 7, 22, and 26, which infringed Marks 1-3, 6, and 7.[10] On this basis, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages from MKA for the willful infringement of each of the 5 Marks stated above, for total statutory damages for trademark infringement of $2,500,000. *See* Pls.' Mot. (dkt. 68) at 18.

*Ali Alam*:

Ali Alam is an individual residing in Virginia. *See* Proof of Svc. (dkt. 26) at 1. He was personally served at 10:58 a.m. on November 15, 2023. *Id.* On November 2, 2022, counsel for Amazon received an email from Mr. Alam's email address (the email was signed by Mr. Alam, Defendant Mehwash Munir, Dynamic Digital Solutions, and One Stop Computer Services – which, of course, indicates a degree of coordination and confederation among these Defendants). *See* Goodell Decl. (dkt. 68-2) at ¶¶ 7-8, and Exh. A. The email confirmed the receipt of service and stated, *inter alia*, "[w]e received this lawsuit and we have insufficient knowledge of these allegations . . . Please let me know what we should do." *Id.* (dkt. 68-2) at 5. Thereafter, Mr. Alam reportedly stopped responding to Plaintiffs' counsel's emails (*see id.* at ¶ 8); and, neither he, nor Defendants Munir, Dynamic Digital Solutions, or One Stop Computer Services have appeared or participated in this case. Amazon has alleged that Mr. Alam owned, operated, or was otherwise affiliated with 5 scan websites that intentionally and willfully used Amazon Marks to deceive users into believing they were doing business with Amazon, APub, or KDP – namely, scam websites 6, 7, 20, 22, and 26, which infringed Marks 1-3, 6, and 8.[11] On this basis, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages against Mr. Alam for willful infringement of each of the 5 Marks stated above, for total statutory damages for trademark infringement of $2,500,000. *See* Pls.' Mot. (dkt. 68) at 18-19.

While the registration listed an email address belonging to Defendant Mavia Nizam (as was also the case with scam websites 18 and 21), Mr. Alam was listed as the domain name

---

[10] See Compl. at ¶¶ 62, 65, 108, 121; *see also* Freed Decl. (dkt. 68-1) at 30-33.

[11] *See* Compl. at ¶¶ 62, 65, 103, 108, 121; *see also* Freed Decl. (dkt. 68-1) at 30-33.

United States District Court
Northern District of California

United States District Court
Northern District of California

registrant for scam website 20 (this overlap is indicative of a broader degree of confederation between the above-mentioned Defendants, one that also includes Defendant Nizam). *See* Compl. (dkt. 1) at ¶ 103. Further, Amazon learned through third-party discovery practice from GoDaddy that Mr. Alam was also listed as the domain name registrant (along with Defendant Nizam) for scam websites 19 and 23. *See* Freed Decl. (dkt. 68-1) at 20. Amazon alleges that the domain names for Websites 19, 20, and 23 are confusingly similar to Amazon Mark 3 ("AMAZON.COM") and its advertised paid publishing services. *See* Pls. Mot. (dkt. 68) at 19. Accordingly, Amazon argues that this confusing similarity shows that these domains were registered in bad faith by Mr. Alam with an intent to profit from that confusing similarity at Amazon's expense and to its detriment. *Id.* The domain names in question relate to scam website 19 (Amazondigitalpro.com) (*see* Compl. (dkt. 1) at ¶¶ 100-02); scam website 20 (amazonpublisherpro.com) (*id.* at ¶¶ 103-04); and, scam website 23 (amazonkdpublishing.com) (*id.* at ¶¶ 109-12).). In this regard, Amazon seeks an additional $100,000 per domain in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see* Compl. (dkt. 1) at ¶¶ 147-152), for a total of $300,000 against Mr. Alam on this basis. Thus, the combined sum that Amazon seeks against Mr. Alam is $2,800,000 in damages.

*Dynamic Digital Solutions LLC ("DDS")*:

DDS is a limited liability company incorporated in Virginia. *See* Goodell Decl., Exh. H, (dkt. 46-2) at 45. DDS was served on November 15, 2023, by personal service on its registered agent, Defendant Alam. *See* Proof of Svc. (dkt. 26) at 1. Amazon has alleged that DDS owned, operated, or was otherwise affiliated with scam websites 11, 13, and 26, through which Amazon Marks 1, 3, 6, and 8 were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[12] On this basis, as provided for in § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the 4 aforementioned Marks against DDS, for total statutory damages for trademark infringement of $2,000,000. *See* Pls.' Mot. (dkt. 68) at 19-20.

---

[12] *See* Compl. (dkt. 1) at ¶¶ 75, 77, 121; *see also* Freed Decl. (dkt. 68-1) at 30-33.

*Mehwash Munir*:

  Mr. Munir, a resident of Virginia, was personally served on November 18, 2023. *See* Proof of Svc. (dkt. 31) at 1. Amazon has alleged that Mr. Munir owned, operated, or was otherwise affiliated with scam websites 6, 7, 22, and 26, through which Amazon Marks 1-3, 6, and 8 were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[13] On this basis, as provided for in § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the 5 aforementioned Marks against Mr. Munir, for total statutory damages for trademark infringement of $2,500,000. *See* Pls.' Mot. (dkt. 68) at 20.

*One Stop Computer Services LLC ("One-Stop")*:

  One-Stop is a limited liability company incorporated in Virginia which canceled its registration on November 9, 2023. *See* Goodell Dec., Exh. J, (dkt. 46-2) at 49.[14] One-Stop was served by personal service on its registered agent, Defendant Munir, on November 15, 2023. *See* Proof of Svc. (dkt. 26) at 3. As was the case with Defendant Munir, Amazon has alleged that One-Stop owned, operated, or was otherwise affiliated with scam websites 6, 7, 22, and 26, through which Amazon Marks 1-3, 6, and 8 were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[15] Thus, pursuant to § 1117(c), Amazon also seeks $500,000 in statutory damages for the willful infringement of each of the 5 above-mentioned Marks against One-Stop, for total statutory damages for trademark infringement of $2,500,000. *See* Pls.' Mot. (dkt. 68) at 20.

*Muhammad Zubair Khan*:

  Mr. Zubair Khan is a resident of Los Angeles, California, and was personally served on

---

[13] *See* Compl. (dkt. 1) at ¶¶ 14, 61, 66, 63, 121; *see also* Freed Decl. (dkt. 68-1) at 30-33.

[14] As to the information on file with the State Corporation Commission for the Commonwealth of Virginia regarding One-Stop – the entity's email address is the same one used by Defendant Alam in his communications with Amazon's counsel (that is, "aa.alialam@gmail.com"); and, One-Stop's registered agent, Defendant Munir, is listed as having held the title, "Cyber Security Specialist." *See id.*

[15] *See* n. 13 supra.

November 14, 2023. *See* Proof of Svc. (dkt. 25) at 1. An attorney representing Mr. Zubair Khan and Techture Inc. contacted counsel for Amazon in July of 2024 stating that he was aware that his client had been defaulted, but then subsequently failed to provide further information to Amazon. *See* Pls.' Mot. (dkt. 68) at 21. Neither Mr. Zubair Khan, nor his counsel, have appeared in this case or served a responsive pleading. *See id*. Amazon has alleged that Mr. Zubair Khan owned, operated, or was otherwise affiliated with scam websites 11, 12, 13, 16, 17, through which Amazon Marks 1, 3, 6, and 8 were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[16] On this basis, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the aforementioned 4 Marks against Mr. Zubair Khan, for total statutory damages for trademark infringement of $2,000,000. *See* Pls.' Mot. (dkt. 68) at 21.

Additionally, Mr. Zubair Khan was the domain name registrant for scam websites 16 and 17. *See* Compl. (dkt. 1) ¶¶ 89 & 92. Amazon has alleged that the domain names for scam websites 16 and 17 are confusingly similar to Amazon Mark 3 ("AMAZON.COM") and its advertised paid publishing services. *See* Pls. Mot. (dkt. 68) at 21. Accordingly, Amazon submits that this confusing similarity demonstrates that these domains were registered in bad faith by Mr. Zubair Khan with the intent to profit from that confusing similarity at Amazon's expense and to its detriment. *Id*.[17] In this regard, Amazon seeks an additional $100,000 per domain in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see* Compl. (dkt. 1) at ¶¶ 147-152), for a total of $200,000 against Mr. Zubair Khan on this basis. The combined sum that Amazon seeks against Mr. Zubair Khan is $2,200,000 in damages.

*Techture Inc.*:

Techture is a corporation incorporated in California by Defendant Zubair Khan – its Chief Executive Officer, Chief Financial Officer, and Secretary. *See* Goodell Decl., Exh. M, (dkt. 46-2)

---

[16] *See* Compl. (dkt. 1) at ¶¶ 75, 81, 77, 89, 92; *see also* Freed Decl. (dkt. 68-1) at 30-33.

[17] The domain names for scam websites 16 and 17 are "Amazonpublishers.ca," and "amazonbookhub.com." *See id*. at ¶¶ 89-91, and 92-94.

United States District Court
Northern District of California

at 56-57. On November 14, 2023, Techture was served by personal service on its registered agent, Defendant Zubair Khan. *See* Proof of Svc. (dkt. 25) at 2. As was the case with Defenant Zubair Khan, Amazon has alleged that Techture owned, operated, or was otherwise affiliated with scam websites 11, 12, 13, 16, 17, through which Amazon Marks 1, 3, 6, and 8 were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[18] On this basis, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the aforementioned 4 Marks against Techture, for total statutory damages for trademark infringement of $2,000,000. *See* Pls.' Mot. (dkt. 68) at 21-22.

*Ashhar Rawoof*:

Mr. Rawoof is an individual residing in Texas and was personally served on November 27, 2023. *See* Proof of Svc. (dkt. 27) at 3. Amazon has alleged that Mr. Rawoof owned, operated, or was otherwise affiliated with scam websites 6, 7, and 22, through which Amazon Marks 1-3, 6, and 8 were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[19] On this basis, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the aforementioned 5 Marks against Mr. Rawoof, for total statutory damages for trademark infringement of $2,500,000.

Additionally, Mr. Rawoof was the domain name registrant for scam website 7. *See* Compl. (dkt. 1) at ¶¶ 64-65. The domain name for scam website 7 is confusingly similar to Amazon Mark 3 ("AMAZON.COM") and its advertised paid publishing services which, according to Amazon, demonstrates that the domain was registered in bad faith and used by Mr. Rawoof with an intent to profit at Amazon's expense and to its detriment.[20] In this regard, Amazon seeks an additional $100,000 in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see* Compl. (dkt. 1) at ¶¶ 147-152) against Mr. Rawoof on this basis. Thus, Amazon seeks a combined damages sum of $2,600,000 against Mr. Rawoof. *See* Pls.' Mot. (dkt. 68) at 23-24.

---

[18] *See* n. 16 supra.

[19] *See* Compl. (dkt. 1) at ¶¶ 63, 65-66; *see also* Freed Decl. (dkt. 68-1) at 30-33.

[20] The domain name for scam website 7 is "Amazonkindledirectpublishing.com." *See id*. at ¶¶ 64-66.

United States District Court
Northern District of California

1    _Smart Startup Solutions, LLC ("Smart-Startup")_:

2          Smart-Startup is a limited liability company incorporated in Illinois with a principal

3    address in Chicago – its listed manager is Defendant Rawoof. *See* Goodell Decl., Exh. P (dkt. 46-

4    2) at 70-72. Service of process was effectuated via personal service on its registered agent on

5    November 14, 2023. *See id.* at 72 (Smart-Startup's annual report filed with the Illinois Secretary

6    of State wherein its registered agent is identified); *see also* Proof of Svc. (dkt. 29) at 1. Amazon

7    has alleged that Smart-Startup owned, operated, or was otherwise affiliated with scam websites 11,

8    12, 13, 14, and 15, through which Amazon Marks 1, 3, 6, and 8 were intentionally and willfully

9    used to deceive users into believing they were doing business with Amazon, APub, or KDP.[21] On

10   this basis, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful

11   infringement of each of the aforementioned 4 Marks, yielding a total statutory damages sum of

12   $2,000,000 for trademark infringement against Smart-Startup. *See* Pls.' Mot. (dkt. 68) at 24.

13   _Yasir Agar_:

14         Mr. Agar is an individual residing at Flat 402, 4th Floor, Zulekha Palace, Plot #15,

15   BMCHS, Sharfabad, Karachi, Pakistan. *See* Goodell Decl. (dkt. 61-1) at ¶¶ 27-29. Given this fact,

16   on March 4, 2024, Judge Thompson authorized alternative service via electronic mail as to Mr.

17   Agar.[22] One of Mr. Agar's email addresses ("yasir@smartstartupsolutions.com") is indicative of

18   his affiliation with both Defendant Smart-Startup and Defendant Rawoof (further evidence of

19   broad coordination and confederation by and among many or all of the Defendants). *See* Goodell

20   Decl. (dkt. 61-1) at ¶ 29. Amazon has filed proof that the service email and was sent, delivered

21   and opened on March 8, 2024. *See* Goodell Decl., Exh. D & E (dkt. 61-2) at 11-15.

22         Amazon has alleged that Mr. Agar owned, operated, or was otherwise affiliated with scam

23   websites 11, 12, 13, 14, and 15 (the same list set forth for Smart-Startup), through which Amazon

24   Marks 1, 3, 6, and 8 were intentionally and willfully used to deceive users into believing they were

25

26

27   [21] *See* Compl. (dkt. 1) at ¶¶ 77, 82, fig. 22, 83, 87; *see also* Freed Decl. (dkt. 68-1) at 30-33.

28   [22] *See* n. 7 supra.

14

doing business with Amazon, APub, or KDP.[23] Thus, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages against Mr. Agar for the willful infringement of each of the 4 above-mentioned Marks, for total statutory damages for trademark infringement of $2,000,000. Additionally, Mr. Agar was the domain name registrant for scam websites 12-15. *See* Compl. (dkt. 1) at ¶¶ 79, 82, 85, 87. The domain names for scam websites 12-15 are confusingly similar to Amazon Mark 3 ("AMAZON.COM") and its advertised paid publishing services which Amazon believes to be demonstrative of the fact that the domains were registered in bad faith and used by Mr. Agar with an intent to derive profits at Amazon's expense and to its detriment.[24] In this regard, Amazon seeks an additional $100,000 for each of the four aforementioned domains in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see* Compl. (dkt. 1) at ¶¶ 147-152) – for a combined damages sum of $2,400,000 against Mr. Agar. *See* Pls.' Mot. (dkt. 68) at 24-25.

*Mavia Nizam*:

Mr. Nizam is an individual residing at 1/22 Shah Faisal Colony, Karachi, Sindh, 75700, Pakistan. *See* Goodell Decl. (dkt. 61-1) at ¶¶ 61-68. With Judge Thompson's authorization,[25] Amazon served Mr. Nizam by e-mail on March 8, 2024; and, Amazon has filed proof that the service email was sent, delivered, and opened on that date. *See* Goodell Decl., Exh. H & I (dkt. 61-2) at 22-25. Amazon has alleged that Mr. Nizam owned, operated, or was otherwise affiliated with scam websites 18, 19, 20, 21, and 23, through which Amazon Marks 1, 2, 3, and 6, were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[26] As a result, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the 4 above-mentioned Marks against Nizam, for

---

[23] *See* Compl. (dkt. 1) at ¶¶ 79, 81, 82, 85, 87; *see also* Freed Decl. (dkt. 68-1) at 30-33.

[24] The domain name for scam website 12 is "Amazonprofinc.com" (*see id.* at ¶¶ 79-81); the domain name for scam website 13 is "amazonkindlebookpublishing.com" (*id.* at ¶¶ 82-84); the domain name for scam website 14 is "amazonkindleproinc.com" (*id.* at ¶¶ 85-86); lastly, the domain name for scam website 15 is "amazonkdpublishers.com" (*id.* at ¶¶ 87-88).

[25] *See* n. 7 *supra*.

[26] *See* Compl. (dkt. 1) at ¶¶ 20, 95, 97-98, 103, 105; *see also* Freed Decl. (dkt. 68-1) at 30-33.

United States District Court
Northern District of California

total statutory damages of $2,000,000 for trademark infringement. Additionally, Mr. Nizam was the domain name registrant for scam websites 18, 20-21, and 23. *See* Compl. (dkt. 1) at ¶¶ 95, 105. Further, Amazon has learned through subsequent third-party discovery practice from registrar GoDaddy that Mr. Nizam (along with his confederate, Defendant Alam) was also the domain name registrant for scam website 19. *See* Freed Decl. (dkt. 68-1) at ¶ 7; *see also id.*, Exh B, at 19. Amazon contends that the domain names for scam websites 18-21 and 23 are confusingly similar to Amazon Mark 3 ("AMAZON.COM") and its advertised paid publishing services which Amazon contends to be demonstrative of the fact that these domains were registered in bad faith and used by Mr. Nizam with an intent to profit at Amazon's expense and to its detriment.[27] Accordingly, Amazon seeks an additional $100,000 for each of the five aforementioned domains in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see* Compl. (dkt. 1) at ¶¶ 147-152) – amounting to a combined damages sum of $2,500,000 against Mr. Nizam. *See* Pls.' Mot. (dkt. 68) at 25-26.

## *Muhammad Shiraz Qureshi*:

Mr. Qureshi is an individual residing in Karachi, Pakistan. *See* Goodell Decl. (dkt. 61-1) at ¶ 47. With the Court's authorization,[28] Amazon served Qureshi by e-mail on March 8, 2024; and Amazon has filed proof that the service email was sent, delivered, and opened on that date. *See* Goodell Decl., Exh. F (dkt. 61-2) at 17-20. On the same day, Mr. Qureshi responded to Plaintiffs' counsel via email and denied having "any business" of this sort. *Id.* at 17. He then contacted Plaintiffs' counsel through an attorney in May and June of 2024; and, while he declined to provide requested information about the scheme, he and his attorney reportedly communicated that they were aware of the lawsuit and of the fact that he had defaulted. *See* Pls.' Mot. (dkt. 68) at 26. In any event, Amazon has alleged that Mr. Qureshi owned, operated, or was otherwise affiliated with

---

[27] The domain name for scam website 18 is "Amazondigitalpro.com" (*see* Compl. (dkt. 1) at ¶¶ 95-98); the domain name for scam website 19 is "amzdigitalpro.com" (*id.* at ¶¶ 100-02); the domain name for scam website 20 is "amazonpublisherpro.com" (*id.* at ¶¶ 103-04); the domain name for scam website 21 is "amazonpublishingzone.com" (*id.* at ¶¶ 105-06); lastly, the domain name for scam website 23 is "amazonkdppublication.com" (*id.* at ¶¶ 109-12).

[28] *See* n. 7 supra.

scam website 26, through which Amazon Marks 1, 3, 6, and 8, were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[29] As a result, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the 4 herein mention Marks against Mr. Qureshi, for total statutory damages for trademark infringement of $2,000,000. *See* Pls.' Mot. (dkt. 68) at 26. Further, Mr. Qureshi was the domain name registrant for scam website 26, for which Amazon contends that the domain name is confusingly similar to Amazon Mark 3 ("AMAZON.COM") and its advertised paid publishing services which Amazon contends to be demonstrative of the fact that this domain was registered in bad faith and used by Mr. Qureshi with an intent to profit at Amazon's expense and to its detriment.[30] Consequently, Amazon seeks an additional $100,000 for the aforementioned domain in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see* Compl. (dkt. 1) at ¶¶ 147-152) – amounting to a combined damages sum of $2,100,000 against Mr. Qureshi. *See* Pls.' Mot. (dkt. 68) at 26-27.

### ***Facts Related to Individual Late-Appearing Defaulted Defendants***:

*Muhammad Mudassar Anwar & Tech Drive PVT LLC ("Tech Drive)*:

Mr. Anwar is an individual residing in Scarsdale, New York. *See* Proof of Svc. (dkt. 27) at 1. He was personally served on November 29, 2023. *Id*. Amazon has alleged that Mr. Anwar owned, operated, or was otherwise affiliated with scam websites 8, 9, 10, 24, and 25, through which Amazon Marks 1, 2, and 3, were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[31] As a result, pursuant to § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the aforementioned Marks, for total statutory damages for trademark infringement of $1,500,000 against Mr. Anwar. *See* Pls.' Mot. (dkt. 68) at 26-27.

Tech Drive is a limited liability company incorporated in New York. *See* Goodell Decl.,

---

[29] *See* Compl. (dkt. 1) at ¶ 81; *see also* Freed Decl. (dkt. 68-1) at 30-33.

[30] The domain name for scam webize 26 is "Amzkindlepublishing.com." *See* Compl. (dkt. 1) at ¶¶ 119-20.

[31] *See* Compl. (dkt. 1) at ¶¶ 71, 113, 115; *see also* Freed Decl. (dkt. 68-1) at 30-33.

United States District Court
Northern District of California

Exh. O (dkt. 46-2) at 63-64. Records from the Corporations Division of the New York Department of State list Defendant Anwar as Tech Drive's organizer and its agent for service of process. *Id.* at 63, 66-67. Furthermore, the residential address in Scarsdale, New York (at 919 Wilmot Road), at which Defendant Anwar was personally served on November 29, 2023, is the same address listed in Tech Drive's Articles of Organization. *Compare* Proof of Svc. (dkt. 27) at 1 *with* Goodell Decl., Exh. O (dkt. 46-2) at 66-67. It is therefore unremarkable that Tech Drive was served by personal service on Defendant Anwar – its registered agent. *See id.* at 66; *see also* Proof of Svc. (dkt. 27) at 2. Amazon has alleged that Tech Drive owned, operated, or was otherwise affiliated with scam websites 8, 9, 10, 24, and 25, through which Amazon Marks 1, 2, and 3, were intentionally and willfully used to deceive users into believing they were doing business with Amazon, APub, or KDP.[32] As a result, as provided for by § 1117(c), Amazon seeks $500,000 in statutory damages for the willful infringement of each of the 3 above-mentioned Marks, for total statutory damages for trademark infringement of $1,500,000 against Tech Drive. As mentioned (*see* n. 32 supra), Tech Drive was the domain name registrant for scam website 24 (see Compl. (dkt. 1) at ¶ 113), and Amazon has learned through subsequent third-party discovery from registrar NameCheap that Tech Drive was also the domain name registrant for Websites 10 and 25 – and, Amazon contends that the domain names for scam websites 10, 24, and 25 are confusingly similar to Mark 3 ("AMAZON.COM") and its advertised paid publishing services, showing that these domains were registered in bad faith and used by Tech Drive with an intent to profit at Amazon's expense and to its detriment.[33] Hence, as to these three domains, Amazon also seeks an additional $100,000 per domain in cybersquatting damages (as set forth in 15 U.S.C. § 1125(d) and § 1117(a) or (d)) (*see*

---

[32] As to scam website 8, *compare* Compl. (dkt. 1) at ¶ 68, fig. 15 *with* ¶ 70, fig. 16, *and* ¶ 72, fig. 17; as to scam website 9, *see id.*; as to scam website 10 (*see id.* at ¶¶ 71, 113; and Freed Decl., Exh. C, (dkt. 68-1) at 24 (Namecheap records showing scam website 10, "amazonpublishingsol.com," was registered by Tech Drive)); as to scam website 24, *see id.* at 113; as to scam website 25, *see* Compl. (dkt. 1) at ¶¶ 113, 115, and Freed Decl., Exh. C, (dkt. 68-1) at 24 (Namecheap records showing that scam website 10, "amazonprofessionalpubishers.com," was registered by Tech Drive). As to the details of Marks 1, 2, and 3, which Amazon contends were infringed by scam websites 8-10, 24, and 25, *see id.* at 30-33.

[33] The domain name for scam website 10 is "Amazonpublishingsol.com" (*see id.* at ¶¶ 71-72); the domain name for scam website 24 is "amazonpublishingpartner.com" (*see id.* at ¶¶ 113-15); and, the domain name for scam website 25 is "amazonprofessionalpublishers.com" (*see id.* at ¶¶ 116-18).

1   Compl. (dkt. 1) at ¶¶ 147-152) – amounting to a combined damages sum of $1,800,000 against

2   Tech Drive. *See* Pls.' Mot. (dkt. 68) at 22-23.

3           As was the case with the other 14 Defendants who failed to answer or otherwise participate

4   in this litigation – the Clerk of Court also entered a notice of default against Defendant Anwar and

5   Defendant Tech Drive on February 14, 2024. *See* Notice of Entry of Default (dkt. 52). However,

6   unlike the other 14 Defendants, more than 10 months after the entry of the Notice of Default,

7   Defendants Anwar and Tech Drive appeared through counsel on December 20, 2024, over a year

8   after being served with this lawsuit. *See* N.Y. Defs.' Mot. (dkt. 77). The New York Defendants

9   have asked the court to set aside the default that was noticed against them, and have moved to

10  dismiss the case for lack of personal jurisdiction (pursuant to Fed. R. Civ. P. 12(b)(2)) and for

11  improper venue (pursuant to Fed. R. Civ. P. 12(b)(3)). *See* N.Y. Defs.' Mot. (dkt. 77) at 3, 6-10.

12  Perhaps conflating the Clerk's entry of a notice of default with a judge's entry of a default

13  judgment, the New York Defendants argue that "a district court may set aside a default judgment

14  if the judgment is void," and "[a] final judgment is 'void' for purposes of Rule 60(b)(4) when the

15  issuing court lacked jurisdiction, either as to the subject matter of the dispute or over the parties to

16  be bound." *Id*. at 3. Regarding their failure to answer or otherwise participate in the litigation until

17  more than 10 months after the Clerk of Court noticed the entry of default as to them, the New

18  York Defendants only add that "[g]ood cause exists for this Court to set aside the default judgment

19  (sic) in this case because the Court lacked personal jurisdiction over this case and the venue is

20  improper." *Id*. at 4. Through a declaration filed on December 21, 2024, Defendant Anwar states

21  that he lives in Scarsdale, New York; that he is the owner of Defendant Tech Drive (which has

22  also been located in New York at all relevant times, but is now closed); and, that he has never had

23  any connection with California and has never had reason to believe that he could be sued in

24  California. *See* Anwar Decl. (dkt. 78) at 2.

25          As to the New York Defendants' jurisdictional assertions – Amazon submits that "this

26  Court can exercise jurisdiction over both Anwar and Tech Drive due to the way in which the

27  businesses they ran purported to be based in this state and caused harm in this state." Pls.' Opp.

28  (dkt. 82) at 11. On the factual foundation set forth above (*see* n.n. 32 & 33 supra), Amazon argues

United States District Court
Northern District of California

that personal jurisdiction is justifiable on grounds: that email addresses associated with Mr. Anwar and his Tech Drive business were used to operate scam websites 10, 24, and 25; that Namecheap records establish that Mr. Anwar registered scam website 24; and, that a credit card in Mr. Anwar's name was used to make payments on Tech Drive's account at Namecheap linked to those sites. . ." Pls.' Opp. (dkt. 82) at 12; *see also* Fundakowski Decl. (dkt. 82) at ¶¶ 29-44.

As Amazon points out, the intentional acts of trademark infringement and cybersquatting attributable to Mr. Anwar and Tech Drive were expressly directed to California by:

> using physical address and phone numbers listed on [scam] [w]ebsite 10 in Santa Clara, California. Here, the three fraudulent businesses liked to the Defendants—[scam] [w]ebsites 10, 24, and 25—were each located or did dealings within this district. [Scam] [w]ebsite 24 used a 408 area code phone number from Santa Clara County to chat with customers, and [scam] [w]ebsites 10 and 25 advertised physical addresses for their businesses within this district: one in San Francisco, and one in Santa Clara.

Pls.' Opp. (dkt. 82) at 13 (citing Fundakowski Decl. (dkt. 82-1) at ¶¶ 31, 42-44). In broad terms, the Complaint alleges that Mr. Anwar and Tech Drive, together with the other co-Defendants, bear responsibility for the operation of 26 scam websites that have infringed Amazon's registered trademarks in order to divert Amazon's would-be publishing customers (many of whom live in California) and to deceive these victims into purchasing those services from Defendants instead. *See generally* Compl. (dkt. 1) at ¶¶ 37-140. As mentioned above (*see* n.n. 32, 33 supra), scam website 10 ("amazonpublishingsol.com") was registered by Defendant Anwar's business, Defendant Tech Drive; and, in the course of that registration, a credit card in Defendant Anwar's name was used to effectuate the transaction. *See* Fundakowski Decl. (dkt. 82-1) at ¶ 38. Then, a screenshot of scam website 10 (as shown in the Complaint) clearly lists a California address (5201 Great America Pkwy., Unit 320, Santa Clara, California 95054). *See* Compl. (dkt. 1) at ¶ 72, Fig. 17.

Additionally, as stated above (*see* n.n. 32 & 33 supra), Defendants Anwar and Tech Drive also set up scam website 24 ("amazonprofessionalpubishers.com"); and, in April of 2023, when Amazon's investigator reached out to the operators of Website 24 through a form on scam website

20

24[34], the investigator received a responsive text message from a phone number with a Santa Clara County area code.[35] *See* Fundakowski Decl. (dkt. 82-1) at ¶ 31. Additional records reveal that scam websites 10, 24, and 25 were all registered by Tech Drive and that they listed Mr. Anwar's name and/or his home address as the registrant's point of contact. *Id*. at ¶¶ 32-38. As to scam website 25 ("amazonprofessionalpublishers.com") which, once again, was registered by Mr. Anwar's business, Defendant Tech Drive (*see* Freed Decl., Exh. C, (dkt. 68-1) at 24) (domain list records from Namecheap), Amazon submits that on or about January 17, 2024, the URL for scam website 25 "rerouted to another webpage – "About Worldwide Book Publishing" – which encouraged visitors to 'get in touch' at its office address at 548 Market Street, San Francisco, CA 94104." *See* Fundakowski Decl. (dkt. 82-1) at ¶ 43.

Given these purposeful contacts with California (*e.g.*, the use of a California address and phone number(s) on scam websites that were clearly linked to the New York Defendants), Amazon submits that the court can easily exercise personal jurisdiction over the New York Defendants in light of the fact that ""[a] corporation can suffer economic harm [] where the bad acts occurred.'" Pls.' Opp. (dkt. 82) at 13 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)). The gist of Amazon's argument as to personal jurisdiction, as well as venue, as to all Defendants (including, of course, the New York Defendants) is that the economic loss and harm that has been caused by Defendant's intentional trademark infringement and cybersquatting has been experienced not only in Washington (which is Amazon's principal place of business), but also in California – which "is one of Amazon's largest sales territories in the U.S. for its publishing businesses, Amazon Publishing and Kindle Direct Publishing." *See id*. at 14 (citing Sommerfeld Decl. (dkt. 68-3) at ¶ 9; and, Sarke Decl. (dkt. 68-4) at ¶ 13). At bottom, Amazon contends that "[b]ecause a 'significant number of Californians' use Amazon's publishing services and are subject to being confused and defrauded by Defendants' conduct, 'a jurisdictionally significant amount of [Amazon's] economic harm took place in California.'" *Id*.

---

[34] For a screenshot of the form as it appeared on scam website 24, *see* Compl. (dkt. 1) at ¶ 114, fig. 35.

[35] The number was: (408) 471-1793.

United States District Court
Northern District of California

1   (quoting *Mavrix Photo*, 647 F.3d at 1230). On that same basis, Amazon adds that venue is also

2   proper in the Northern district of California because a substantial part of the events or omissions

3   giving rise to the claim occurred here. *Id*.

4          By way of an attachment to his Reply Brief, Defendant Anwar – through a second

5   declaration – now claims: that he "never created any websites as Plaintiff alleges"; that he "never

6   inserted a California address as Plaintiff claims; that he has never owned a phone number with a

7   408 area code and did not add any such number to any website; that he is "not the guilty party in

8   this case as [he] was a victim of identity theft," in regards to which, he has allegedly "filed a

9   police report with the New Rochelle Police Department." *See* Anwar Decl. (dkt. 86-1) at 2-3.

10  Defendant Anwar then directs the court to "Exhibit 1 for a true and correct (sic) of the police

11  report." *Id*. at 2. The only attachment thereto, however, consists of two blue-colored page

12  fragments of what appears to be some sort of document or paperwork associated with the New

13  Rochelle Police Department – but, by no means is it clear that these page fragments constitute a

14  police report, let alone "a true and correct" copy of a police report relating to the alleged identity

15  theft to which Defendant Anwar's Declaration alludes. *See id*. at 4-5. By way of reply arguments,

16  the New York Defendants make a series of other assertions relating to jurisdiction and venue that

17  do not need to be repeated here. *See generally* N.Y. Defs.' Reply (dkt. 85) at 2-5. As to their

18  failure to appear or participate in this case for more than a year after they were served (*see* dkt.

19  27), and for more than 10 months after the notice of entry of default as to them (*see* dkt. 52), the

20  New York Defendants gloss over this large swath of time and merely state that, "[a]ny delay in

21  responding to this action was due to a lack of legal funds to hire an attorney. He had no ability to

22  respond at the time." *See* N.Y. Defs.' Reply (dkt. 85) at 5. More specifically, the Declaration

23  attached to Defendant Anwar's Reply Brief states that "[t]he reasons I did not hire an attorney

24  earlier were that I was innocent and also in extreme financial hardship and I could not afford to

25  hire an attorney to represent me." *See* Anwar Decl. (dkt. 86-1) at ¶ 16.

26         At this point, another interesting link among Defendants should be noted. In addition to the

27  above-cited facts, which clearly linked the New York Defendants as the registrants and owners of

28  scam websites 8, 9, 10, 24, and 25 (some of which advertised a California address and used a

California phone number when communicating with Amazon's would-be customers in the course of using trademark infringement and cybersquatting to deceive them into believing they were doing business with Amazon) – the New York Defendants appear to have been confederated with Defendant VTL (a Florida Corporation) and Defendant Muhammad Usman Khan. As mentioned above (*see* n. 9 supra), Defendant VTL was also affiliated, *inter alia*, with scam websites 8, 9, and 10 (as were the New York Defendants). Defendant Muhammad Usman Khan (using an address in Fairfax, Virginia) is listed on corporate records as the President and incorporator of Defendant VTL. *See* Goodell Decl., Exh. A, (dkt. 46-2) at 2-6. The addresses and payment methods on the account for VTL and Defendant Usman Khan included two physical addresses for Defendant Usman Khan: one in Fairfax, Virginia, and another in Islamabad, Pakistan. *See* Pls.' Request for Entry of Default (dkt. 61) at 2. Amazon uncovered evidence that Defendant Usman Khan was in fact residing in Pakistan (*see* Goodell Decl. (dkt. 61-1) at ¶ 13); and, ultimately, Defendant Usman Khan was served with this lawsuit at his Pakistan address (*see* n. 7 supra). Thus, in addition to the many links showing the responsibility and culpability of the New York Defendants for the registration and ownership of scam websites 8, 9, 10, 24, and 25 – Amazon has also developed evidence that shows that the New York Defendants were confederated with Defendants VTL and Usman Khan, all of whom were associated with the use of scam websites 8, 9, and 10.

### APPLICABLE LEGAL STANDARDS

When entering default judgment, courts must first confirm that they have personal jurisdiction and subject-matter jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If jurisdiction exists, the following factors are considered to determine if default judgment is warranted (1) the possibility of prejudice to the plaintiff if judgment is not entered, (2) the merits of the plaintiff's claims, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy in favor of obtaining a decision on the merits. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)). If consideration of these factors supports default judgment, judgment may be entered in an amount that is supported by the evidence and that doesn't "differ in kind from, or

1    exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). It should also be

2    noted that "[a] federal court does not have jurisdiction over a defendant unless the defendant has

3    been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized*

4    *Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Therefore, before granting default judgment, a

5    district court should ensure the adequacy of the service of process on the party against whom

6    default judgment is requested. *See Bee Creek Photography v. Office Yoga, LLC*, No. 23-CV-

7    04375-JCS, 2024 U.S. Dist. LEXIS 103522, 2024 WL 2875103, at *3 (N.D. Cal. May 8, 2024)

8    (courts usually consider the adequacy of service of process when evaluating the merits of a motion

9    for default judgment); *see also GS Holistic, LLC v. Abbasi*, 2024 U.S. Dist. LEXIS 108237, *1

10   (N.D. Cal., June 18, 2024).

11       As to the New York Defendants' request to set aside the entry of default, Federal Rule of

12   Civil Procedure 55(c) provides that a court "may set aside an entry of default for good cause."

13   Here, "[t]he 'good cause' standard that governs vacating an entry of default under Rule 55(c) is

14   the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding*

15   *II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). Thus, in determining

16   whether to set aside an entry of default or default judgment, a district court must consider three

17   factors: (1) whether the moving party's own culpable conduct led to the default; (2) whether the

18   nonmoving party would be prejudiced by setting aside the default; and, (3) whether the moving

19   party has no meritorious defense. *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th

20   Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 121

21   S. Ct. 1322, 149 L. Ed. 2d 264 (2001); *see also Am. Ass'n of Naturopathic Physicians v. Hayhurst*,

22   227 F.3d 1104, 1108 (9th Cir. 2000); *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).

23   While "[a] motion to set aside a default may be denied if any one factor goes against the

24   defendant, . . . it would still be within a district court's discretion to grant the motion." *Yagman v.*

25   *Galipo*, No. CV 12-7908 GW (SHx), 2013 U.S. Dist. LEXIS 48713, 2013 WL 1287409, at *9

26   (C.D. Cal. Mar. 25, 2013) (citing *Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1112 (9th Cir.

27   2011)).

28       As to the New York Defendants' assertion that this court cannot exercise personal

24

United States District Court
Northern District of California

jurisdiction over them, that analysis would begin with the proposition that courts may assert either general or specific jurisdiction over the person of a nonresident party. *See e.g., Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223-1228 (9th Cir. 2011). As to general jurisdiction, a court may exercise such jurisdiction over a nonresident party such as "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)). For general jurisdiction to exist, a defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that amount to or "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (alterations in original) (quoting *International Shoe*, 326 U.S. at 318)).

Specific jurisdiction, on the other hand, is analyzed under the following three-prong test: (1) the non-resident defendant must purposefully direct his or her activities at the forum state, or consummate some transaction with the forum or resident thereof, or perform some act by which he or she purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice – *i.e.*, it must be reasonable. *Mavrix*, 647 F.3d at 1227-1228 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004), quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). A plaintiff bears the burden of satisfying the first two prongs. *Mavrix*, 647 F.3d at 1228 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If the plaintiff satisfies that burden, the burden then shifts to the defendant to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Mavrix*, 647 F.3d at 1228 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

United States District Court
Northern District of California

### DISCUSSION

For the reasons stated below, the undersigned finds that the entry of default judgment is warranted as to all Defendants, and that the New York Defendants' request to set aside the entry of default and to dismiss the case for lack of personal jurisdiction should be denied. As a threshold matter, the undersigned will note that in the default judgment context, as in any other, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

As to the New York Defendants' request to set aside the entry of default (*see* dkt. 77), the undersigned finds that good cause has not been shown in that regard. As mentioned above, the determination as to whether a court should set aside an entry of default, or a default judgment, entails a consideration of the following three factors: (1) whether the moving party's own culpable conduct led to the default; (2) whether the nonmoving party would be prejudiced by setting aside the default; and (3) whether the moving party has no meritorious defense. *See Knoebber*, 244 F.3d at 696. Here, the New York Defendants' only explanation for failing to appear or participate in this case for over a year after having been served appears in Mr. Anwar's declaration, and is a statement to the effect that he failed to appear or participate in this case because he was "innocent" and also because he could not afford an attorney. *See* Anwar Decl. (dkt. 86-1) at ¶ 16. The undersigned does not find this statement such that it would affect the determination of any of the three above-mentioned factors in favor of the New York Defendants. For example, Defendant Anwar could have sent the court a 1-line letter – pronouncing his innocence – and (assuming his subsequent adherence to the court's orders and directives) he could have avoided default without ever spending a penny on an attorney. Nor has he explained how or why his financial situation changed during the 10 months since his default such that he was suddenly able to retain his current counsel at this late stage in the now-defaulted case. In short, the undersigned finds that the New York Defendants are defaulted as a result of their own culpable conduct. The undersigned also finds that (given the late stage of the default proceedings and the time and financial resources expended by Amazon in preparing and presenting its substantial filings in support of the entry of default and its motion for default judgment) that Amazon would indeed be prejudiced if the court

26

were to set aside the entry of default as to the New York Defendants. Lastly, as set forth above, the New York Defendants have not even suggested, let alone expounded upon or detailed, anything even remotely resembling a meritorious defense. In the face of Amazon's overwhelming tide of documentation which clearly tethers the New York Defendants to the registration and ownership of scam websites 8-10, 24, and 25, as well as evidence that the New York Defendants were confederated with Defendant VTL and Defendant Usman Khan as to the operations of scam websites 8, 9, and 10, the New York Defendants' only suggestion of a defense is a hollow and unsubstantiated assertion to the effect that Defendant Anwar has been the victim identity theft – coupled with a number of conclusory statements amount to nothing more than bald and naked blanket denials. These are not meritorious defenses. Thus, the undersigned finds that all three factors – let alone one – weigh against the New York Defendants. As a result, the undersigned **RECOMMENDS** that the court **DENY** the New York Defendants' request to set aside the entry of default.

### A. Subject-Matter Jurisdiction:

The Court has subject-matter jurisdiction over this case because the claims asserted in the Complaint all arise under federal law (more specifically, under federal intellectual property law), which gives rise to original jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338(a) because Amazon claims trademark infringement (15 U.S.C. § 1114), false affiliation and designation of origin (§ 1125(a)), trademark dilution (§ 1125(c)), and cybersquatting (§ 1125(d)). *See* Compl. (dkt. 1) at 62-68.

### B. Personal Jurisdiction:

Initially, as mentioned above, it is in the context of personal jurisdiction that courts also consider the adequacy of service of process when evaluating the merits of a motion for default judgment. *See Bee Creek Photography*, 2024 U.S. Dist. LEXIS 103522, 2024 WL 2875103, at *3. On the factual basis set forth above (as well as on the basis of Amazon's detailed recitations in its many filings, declarations, and exhibits), the undersigned finds that service of process was adequate as to each Defendant in this case. As to personal jurisdiction itself, the Defendants in this case fall into the three categories set forth below.

*The Foreign Defendants*:

The four foreign Defendants (*see* n. 7 supra), Defendants Qureshi, Usman Khan, Agar, and Nizam have had extensive contacts with the United States (and California in particular) which can fairly subject them to this Court's jurisdiction and allow them to be held accountable for the harm they caused victims here. *See id.* at ¶¶ 46, 50, 61-63, 75-78, 121 (alleging and setting forth exemplar victim reports from Amazon's would-be publishing customers who were deceived and swindled by the scam websites into handing over money to various Defendants under the false belief that they were doing business with Amazon); *see also* Sommerfeld Decl. (dkt. 68-3) at ¶ 9, and Sarke Decl. (dkt. 68-4) at ¶ 13 (establishing that California is one of Amazon's largest marketplaces for its publishing services in support of the contention that Defendants' activities vis-à-vis the scam websites caused substantial harm in California).

As Amazon points out, "Federal Rule of Civil Procedure 4(k)(2) serves as the federal long-arm statute for federal claims against foreign nationals [and] [a] court may exercise personal jurisdiction over a foreign defendant under Rule 4(k)(2) when: (1) the claim arises under federal law; (2) the defendant is not subject to general jurisdiction in any state; and (3) the exercise of personal jurisdiction is consistent with due process." *See* Pls.' Mot. (dkt. 68) at 32 (citing Fed. R. Civ. P. 4(k)(2), and *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007), citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)). The third prong is met when a defendant has "minimum contacts" with the *United States*. *See id.* (citing *Holland*, 485 F.3d at 462, and *Pebble Beach*, 453 F.3d at 1158-59 ("This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2).")). Additionally, the due process analysis under Rule 4(k)(2) is identical to the due process analysis under California's long-arm statute. *See Pebble Beach*, 453 F.3d at 1159 ("The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States.").

As to the four foreign Defendants, these requirements are all satisfied. As stated above, all of Amazon's claims against all Defendants arise under federal law. On the factual foundation set forth above, the undersigned finds that these four foreign Defendants have had the requisite

"minimum contacts" with the United States such that the court's exercise of jurisdiction over them would be reasonable. *See Pebble Beach*, 453 F.3d at 1155 (the "minimum contacts" test is satisfied where: (1) the defendant has performed some act or consummated some transaction within the forum; (2) the claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.). Like the other Defendants, these foreign Defendants set up scam websites which faked affiliation with a major American company in order to divert business away from Amazon using its intellectual property while perpetrating widespread fraud on American consumers of publishing services (*see* Compl. (dkt. 1) at ¶¶ 46, 50, 61-63, 75-78, 121 (exemplar victim reports). Thus, the court's exercise of specific jurisdiction as to these Defendants is warranted.

<u>*The California Defendants*</u>:

As to the California Defendants (to wit: Defendants Techture and Muhammad Zubair Khan), courts have general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic," even if those contacts are wholly unrelated to the plaintiff's claims. *See Helicopteros*, 466 U.S. at 415-16. Defendant Techture is a California corporation registered at an address in Los Angeles, California. *See* Compl. (dkt. 1) at ¶ 16. Defendant Zubair Khan, the sole officer of Techture, is also domiciled in Los Angeles. *Id.* ¶ 15. Of course, it has long been understood that general jurisdiction is easily established when the defendant is a resident of the forum state. *See Pennoyer v. Neff*, 95 U.S. 714, 720 (1878); *see also Artas Film & TV Productions GMBH v. Shepherd*, 1992 U.S. App. LEXIS 7112, *4-5 (9th Cir. 1992); *see also Goodyear Dunlop Tires*, 564 U.S. at 924. Accordingly, the court's exercise of personal jurisdiction as to the California Defendants is also warranted.

<u>*The Domestic Non-California Defendants*</u>:

On the factual basis set forth above, because Amazon has shown that all Defendants have minimum contacts with California, and that the claims set forth in the Complaint arise out of those contacts, the burden would shift to Defendants to show a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476-78. As to the New York Defendants, as set forth above, the undersigned finds that they have had far more than the requisite

United States District Court
Northern District of California

"minimum contacts" with California, that the claims against them arose out of those contacts, and that they have failed in presenting any case – let alone a compelling one – that would lead the undersigned to conclude that the exercise of jurisdiction as to them would be unreasonable. Defendant Anwar's naked assertion of mistaken identity and "identity theft" is patently implausible in light of the overwhelming evidence that he and Tech Drive are the owners and registrants of the scam websites attributable to them (that is, scam websites 8-10, 24, and 25). Other than that, all that remains are his bare denials, which the undersigned finds to be undetailed, conclusory, self-serving, and similarly implausible. Accordingly, the undersigned **RECOMMENDS** that the New York Defendants' request to dismiss the case against them for want of personal jurisdiction be **DENIED**.

As to the other domestic non-California Defendants, because they have defaulted, they have obviously not presented – and cannot present – a compelling case to the effect that the exercise of personal jurisdiction would be unreasonable as to them. However, even if these Defendants had not defaulted – in light of the factual foundation set forth above – the undersigned finds that none of these Defendants would be able to present a compelling case that the exercise of jurisdiction over their person in this court would be unreasonable under the circumstances. As Amazon points out as to all Defendants, "[t]hey are responsible for a wide-ranging scam operation making specific use of California physical addresses to facilitate their unlawful activities." Pls.' Mot. (dkt. 68) at 34 n. 13 (citing Compl. (dkt. 1) at ¶¶ 57, 60, 65, 68, 70, 72, 80, 88, 104 n.29, 108). As mentioned above, and as noted by Amazon, "[e]ach of these Defendants committed intentional acts of trademark infringement and/or cybersquatting expressly directed to California, using specific physical addresses in California." *Id*. at 34 (citing Compl. (dkt. 1) at ¶¶ 57, 60, 65, 68, 70, 72, 80, 88, 104 n.29, 108). Much more importantly, because California is a substantial segment of Amazon's relevant market for its publishing business – the undersigned finds as follows: that all Defendants in this case have purposefully directed their activities at California (to a substantial, and jurisdictionally-significant degree); that they actually have, or have attempted to, consummate fraudulent transactions with residents of California while infringing on Amazon's intellectual property; that they have performed acts by which they have purposefully availed

themselves of the privilege of conducting activities in and affecting California (to wit, attempting to divert away Amazon's California-based would-be customers by trademark infringement, trademark dilution, and cybersquatting); that the claims pleaded in the Complaint arises out of and relate to the Defendants' forum-related activities; and, that the exercise of jurisdiction against all Defendants in this case is eminently reasonable. At bottom, as Amazon submits, "[b]ecause a 'significant number of Californians' use Amazon's publishing services and are subject to being confused and defrauded by Defendants' conduct, 'a jurisdictionally significant amount of [Amazon's] economic harm took place in California.'" Pls.' Mot. (dkt. 68) at 34-35 (quoting *Mavrix*, 647 F.3d at 1230).

### *C. The Eitel Factors*:

On the basis of the factual foundation set forth above, the undersigned finds, as to all Defendants, that the overwhelming majority of the *Eitel* factors support the entry of a default judgment in this case.

As to the first factor (the possibility of prejudice to Plaintiff), if default judgment is not entered, Plaintiffs will be prejudiced because it will be left without any judicial remedy (at least as to its claims involving all non-appearing Defendants). The same should be deemed true as to the New York Defendants because they failed to participate in this case for over a year after being served (and for over 10 months after defaulting); and, now, after Amazon has expended considerable sums pursuing a default judgment against them, they have appeared but have failed to establish good cause as to why the entry of their default should be set aside, while advancing a patently meritless jurisdictional argument. Thus, the undersigned finds that this factor supports the entry of default judgment as to all Defendants.

The undersigned will consider the second and third *Eitel* factors (the merits of the Plaintiff's claims, and the sufficiency of the complaint) together. Based on the factual recitation above, and also for the reasons advanced by Amazon (*see* Pls.' Mot. (dkt. 68) at 35-39) the undersigned finds that these factors also support the entry of a default judgment as to all Defendants because the merits of Plaintiffs' claims are clear and because the claims and allegations set forth in the Complaint are sufficient. The same is true for the fourth factor (the sum

31

of money at stake). Amazon has requested middle-of-the-range statutorily-authorized damages sums for each instance of willful trademark infringement and cybersquatting – sums that appear to the undersigned to be appropriate and warranted in light of the egregiousness of Defendants' conduct both with regard to the violation of Amazon's rights and with respect to the harm visited upon Amazon's would-be customers, many or all of whom were defrauded by Defendants. *See* Compl. (dkt. 1) at ¶¶ 46, 50, 61-63, 75-78, 121 (exemplar victim reports setting forth the details of how Amazon's would-be publishing customers – aspiring authors – were defrauded by these Defendants' profligate and invidious use of trademark infringement and cybersquatting as a vehicle to simultaneously defraud the public, tarnish Amazon's business goodwill and reputation, and divert its would-be customers away from it). The treble harms perpetrated by these Defendants cannot be fully remedied by the statutory damages awards sought – which, if anything, underscores the fact that this factor weighs heavily in support of entering a default judgment against these Defendants. It would indeed be an understatement to say that this is not a case in which the amount in controversy "is too large or unreasonable in light of [the] defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 U.S. Dist. LEXIS 38642, 2007 WL 1545173, at \*12 (N.D. Cal. May 29, 2007) (White, J.). The undersigned finds that these Defendants have richly earned the damage awards that Amazon seeks against them.

### D. Remedy

For the reasons stated herein, as well as those stated by Amazon, the undersigned finds that Amazon should be awarded the monetary damages and injunctive relief it seeks. *See* Pls.' Mot (dkt. 68) at 44-49. The undersigned also finds that Amazon has established its entitlement to a court order that would direct the relevant domain registrars and/or registries to transfer the domain names used for scam websites 6, 8, 9, 10, 19, 22, 23, and 25 to Amazon's control. *See id*. at 49-50.

//

//

//

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

Accordingly, for the reasons stated herein, the undersigned **RECOMMENDS** that the New York Defendants' Motion to Set Aside Default and Dismiss Case for Lack of Personal Jurisdiction (dkt. 77) be **DENIED**. The undersigned also **RECOMMENDS** that Amazon's Motion for Default Judgment (dkt. 68) be **GRANTED** as to all Defendants.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order. Plaintiff is **ORDERED** to serve a copy of this Report and Recommendation on all non-appearing Defendants to file a notice of that service on the docket of this case.

**IT IS SO RECOMMENDED.**

Dated: February 10, 2025

_____
ROBERT M. ILLMAN
United States Magistrate Judge